93 So.2d 509

**WHITE WAY PURE MILK COMPANY**

v.

**ALABAMA STATE MILK CONTROL BOARD.**

3 Div. 774.

Supreme Court of Alabama.

March 14, 1957.

Gilchrist & Murphree, Decatur, for appellant.

No appearance for appellee.

LAWSON, Justice.

White Way Pure Milk Company, a partnership composed of C. E. Winton and Emmette L. Barran, referred to hereafter as White Way, is a distributor-licensee of the Alabama State Milk Control Board, hereafter called the Board.

On July 9, 1954, the Board entered its official order No. 348 requiring White Way to make restitution to producer-licensees of the Board the sum of $3,589.60 and to pay to the Board a fine of $1,000 or lose its license.

Order No. 348 in pertinent parts reads:

"3. That the Defendant is hereby found guilty of paying wholesale pro-

ducer-licensees less than the minimum price established in Official Order No. 322, as amended, for 1,794,800 pounds, Class I Milk, shipped to the Defendant by producer-licensees during the period of January 1, 1954, through February 28, 1954, inclusive.

"4. That the amount of underpayment per hundred weight due by the Defendant to said producer-licensees is hereby determined and fixed at 20¢; that the aggregate amount of said underpayment due by the Defendant to said producer-licensees shipping to said Defendant between the dates of January 1, 1954, through February 28, 1954, inclusive, is hereby determined and fixed at 1,794,800 pounds of Class I Milk at an aggregate valuation of $3,589.60.

"5. That the said Defendant, White Way Pure Milk Company, is hereby ordered to pay over the sum of $3,589.-60 due by said Defendant to producer-licensees shipping to said Defendant between January 1, 1954, and February 28, 1954, inclusive. Said payment is to be made to the Alabama State Milk Control Board for distribution by it to producer-licensees shipping to the Defendant during such period of time; that the Executive Secretary of said Board is hereby directed to furnish to the Defendant, White Way Pure Milk Company, a detailed breakdown as to the distribution made of the payment hereunder.

\* \* \* \* \* \*

"7. That the restitution to producer-licensees in the amount of $3,589.60, together with the fine hereinabove imposed of $1,000.00, be paid by the Defendant, White Way Pure Milk Company, to the Executive Secretary and Financial Officer of the Alabama State Milk Control Board within Thirty (30) Days from the date of this Order.

"8. That should the Defendant, White Way Pure Milk Company, fail

or refuse to make restitution to producer-licensee shippers in the amount and manner hereinabove specified or fail or refuse to pay the fine imposed within the time and manner provided that its distributor's license, heretofore granted to the Defendant, White Way Pure Milk Company, be revoked."

White Way sought and obtained a review of Order No. 348 by the circuit court of Montgomery County in the manner prescribed by § 226, Title 22, Code 1940, which section reads:

"Any person affected by any order or action of the board, who deems himself aggrieved by any such order or act may within ten days after receiving notice of any such action or order, have such order, or action reviewed by a writ of certiorari by filing in the circuit court of the county wherein said action or order was taken or made, a verified petition setting out the specific order or action, or any part or parts thereof whereby said person deems himself aggrieved, *and such court shall only consider such matters as contained in the petition.* Upon such petition being so filed a writ of certiorari shall be issued out of such court, directed to the milk control board, requiring it to file with the court the records upon which action or order was made, and requiring said board to file an answer to said petition within thirty days after service of said writ, and upon said board's filing said answer, issue shall be joined thereon without further pleading and the case considered on said petition, the record of said board, and the answer filed by said board, but no new or additional evidence shall be taken or heard by the court. If new or additional evidence is discovered by any party after the hearing by the milk control board, the same may be made grounds for a motion for a new hearing before the milk control board under the rules applicable for similar motions for a new trial in the circuit courts of the State of Alabama. All such cases shall be given preferred settings, and shall be heard by the court as speedily as possible after issue is joined. Such court shall have the power to suspend or stay, such order or action by the board complained of in such petition, pending final hearing only upon petitioner in error executing a bond in such an amount as the court deems reasonably sufficient to compensate or cover any loss or penalty occasioned by such stay or suspension of such order or action, said bond to be payable to said board, and in the event the order, or ruling of the board is affirmed, execution shall be issued by said court on said bond for such amount, if any, as the court shall find necessary to compensate for damages sustained by such stay or suspension of such ruling or order, with cost of the proceedings, but in no case less than the reasonable cost of the transcript of the records of the milk control board, which was had in the proceedings wherein the order, rule or regulation was made, which was appealed from, which cost shall be paid over to the milk control board, and deposited by it in the treasury for its use, the same as all other monies received by the milk control board. *Upon final hearing, such courts shall have jurisdiction to reverse, vacate or modify the order complained of, if upon consideration of the issues before the court, the court is of the opinion the order is unlawful or unreasonable.* Nothing in this section shall be construed as depriving a defendant in a criminal prosecution of a trial by jury, arising out of the violation of any provisions of this chapter." (Emphasis supplied)

On July 9, 1956, the circuit court of Montgomery County rendered a judgment sustaining and affirming Order No. 348 in all respects. From that judgment White Way has appealed to this court.

No provision is made in § 226, Title 22, supra, or in any other parts of the laws

which specifically relate to the Board, for review by this court of the judgment of the circuit court. However, an appeal from that judgment lies to this court by virtue of the provisions now codified as § 1074, Title 7, Code 1940.—Ex parte Bracken, 263 Ala. 402, 82 So.2d 629; Mayfield v. Court of County Commissioners, 148 Ala. 548, 41 So. 932; Lusk v. Capehart, 129 Ala. 599, 30 So. 31; Fountain v. State ex rel. Hybart, 208 Ala. 480, 94 So. 66. The appeal in this case was taken within the thirty days allowed by § 1074, Title 7, supra.

On this appeal we are governed by the same rules of review as was the circuit court. See Alabama Public Service Commission v. Decatur Transfer & Storage, Inc., 257 Ala. 346, 58 So.2d 887. In other words, we can "only consider such matters as contained in the petition" for certiorari filed in the trial court and we cannot reverse the judgment of the trial court unless we are convinced that under the issues properly presented by the petition for certiorari the trial court should have held that Order No. 348 of the Board is "unlawful and unreasonable." Of course, we consider only those matters properly before the trial court which have been correctly urged upon us by White Way, the appellant.

■ There is no merit in the contention of the appellant to the effect that the Board was without authority to order it (White Way) to make restitution to producer-licensees for underpayments or else suffer the loss of its license. In Ex parte Homewood Dairy Products Co., 241 Ala. 470, 475, 3 So.2d 58, 63, we said: "We have no hesitancy in expressing the view that the board has no right under this act to render a personal judgment against defendant for the payment of money, and if it has done so, the circuit court on trying this case on certiorari will vacate and set it aside. *But the board has the right to find that defendant has bought milk from certain producers at a price less than as prescribed, and to find the amount of the difference, and to order that if it is not paid to them each as reasonably required, defendant's license*

*shall be thereby revoked."* (Emphasis supplied) There is no statement in the Milk Control Board Law which expressly authorizes the procedure outlined in that part of the above quotation which we have italicized. However, all parts of the Milk Control Board Law, §§ 205–231, Title 22, Code 1940, as amended, should be construed together and when so construed we are clear to the conclusion that the statement which we have quoted from the Homewood Dairy Products Co. case is in accord with the legislative intent.

Section 210, Title 22, Code 1940, provides in part as follows: "The milk control board is hereby vested with the powers, and it shall be its duty * * * to investigate and ascertain the use to which the distributor or processor makes of all fluid milk purchased and to require the distributor or processor to pay for the said milk at the proper price, * * . *."* Section 217, Title 22, Code 1940, provides in part: "* * * The milk control board may grant or renew a license *or may permit a licensee* to retain his license conditioned upon the agreement of the applicant' or licensee to do the things required by this chapter of him to do, or of any lawful order, rule or regulation of the board, * * *. The milk control board shall have the further power, in the event of such agreement and the subsequent failure of such licensee to comply with such agreement, to revoke such person's license the same as it might have done when said act of omission or commission was originally omitted or committed * * *."* (Emphasis supplied) True, there has been no agreement on the part of White Way to make restitution to the producers from whom it obtained milk at a price admittedly less than that fixed by order of the Board. However, the provisions last quoted above clearly indicate the legislature intended for the Board to have the authority to condition its order of revocation of the license upon performance by the licensee of its obligations under the law to producers. This provision when construed in connection with that quoted from § 210, Title 22,

evinces to us a clear legislative intent that the Board have the authority to make and enter an order which in effect directs the licensee to make restitution or suffer the consequences of having his license revoked.

However, we are convinced that Order No. 348 is "unlawful and unreasonable" in so far as it conditions the right of White Way to retain its license upon making restitution to producers of the sum of $3,589.60, which sum the order shows to have been based on the amount of milk which the Board found that White Way purchased from producer-licensees of the Board during the months of January and February of 1954. The "complaint" which was served on White Way and which it was called upon to answer contains one "count" (6) which we think sufficient to apprise White Way that it was charged with having paid less than the minimum price fixed by the Board for all of the milk which it purchased from producer-licensees during the month of January, 1954, and the evidence clearly justifies a finding by the Board that during that month White Way purchased 974,052 pounds of milk for twenty cents per hundred weight less than the Board-fixed minimum price.

But there is no evidence as to how much milk was purchased by White Way during February of 1954 and we are at a loss to understand how the Board arrived at the figure of 1,794,800 as the number of pounds of milk so purchased by White Way during January and February of 1954. There is nothing in the record to even so much as indicate that in arriving at that figure the Board used records or reports in its files which were not introduced in evidence. In making this last observation we do not want to be understood as holding that such reports and records could have been properly used by the Board in making its finding unless introduced in evidence. A decision of that question is not necessary here. See 18 A.L.R.2d 552–593; Preston v. Preston, 253 Ala. 186, 43 So.2d 398.

The review contemplated by the Alabama State Milk Control Board Law, supra, does not justify courts in making determinations as to whether the facts as found by the Board are supported by the evidence where there is some evidence on which to base a finding. But where there is no evidence to support a finding the courts must intervene, for then there has been a denial of due process. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Alabama Power Co. v. City of Ft. Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337; Ex parte Homewood Dairy Products Co., supra.

Aside from the fact that there is no evidence in this record to support the finding of the court that White Way purchased 1,794,800 pounds of milk during the months of January and February, 1954, there is no charge in the "complaint" which can be said to even remotely suggest that White Way's February purchases were in any way involved. All of the so-called "counts" which relate to the matter of underpayment assert that such course of action was pursued by White Way during "a period beginning January 1, 1954, and ending January 31, 1954."

It is the law that charges filed before an administrative agency need not be drawn with the same nice refinements and subtleties as pleadings in a court of record. Joyce v. City of Chicago, 216 Ill. 466, 75 N.E. 184; Davis v. Board of Registration, 251 Mass. 283, 146 N.E. 708. However, in a proceeding of this kind we believe that the requirement of due process limits the Board to a consideration only of those charges which it has included within the instrument which it has called upon a licensee to answer, whether that instrument be denominated a complaint, a notice or a rule to show cause. Spears Free Clinic and Hospital for Poor Children v. State Board of Health, 122 Colo. 147, 220 P.2d 872; Schyman v. Department of Registration and Education, 9 Ill.App.2d 504, 133 N.E.2d 551; Napuche v. Liquor Control Commission, 336 Mich. 398, 58 N.W.2d 118; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129.

Inasmuch as White Way was not called upon to defend its license because of underpayments made during the month of February, 1954, and because there was no evidence tending to show how much milk was purchased by it during that period of time, we are of the opinion that the Board erred in not limiting the condition upon which White Way might retain its license to the restitution of underpayments for the month of January, 1954, and the $1,000 fine. We feel constrained to this conclusion although a reading of the record made before the Board demonstrates beyond peradventure that White Way intentionally flaunted the minimum price requirements of the Board, not only during January but also during the month of February, 1954, and it otherwise pursued a course of conduct in violation of rules and regulations of the Board which clearly warranted the imposition of the $1,000 fine.

White Way further insists that the Board was without lawful authority to impose a fine in addition to ordering a conditional revocation of its license. In support of this position reliance is had upon the following language found in § 217, Title 22, supra:

"In the event of a violation of any provisions of this chapter or a lawful order, rule or regulation of the milk control board, which is made grounds of a revocation of a license *in this section,* the milk control board may, in its discretion, in lieu of revoking said person's license, assess a fine against such licensee for such violation not to exceed the sum of five hundred dollars for each separate offense." (Emphasis supplied)

Appellant, White Way, asserts that the language just quoted limited the Board to either revoking its license or imposing a fine. It says that the Board could not do both.

But this argument we think overlooks the pertinent provisions of § 216, Title 22, which section (not § 217, Title 22) specifically provides for the revocation of a license because of a failure of a distributor to pay the price prescribed by the Board for milk secured from producer-licensees. We quote: " * * * In the event that any milk dealer, distributor or processor shall fail or refuse to pay for milk purchased from a producer * * * at the price fixed by the board for such milk, without just cause, the milk control board shall have the power to require such person to post a bond with the milk control board and payable to the milk control board with such security as may be approved by the milk control board in a sum equal to twice the amount of the total purchases of milk of such licensee for the past fifteen days, *and in addition, such failure or refusal of such person shall constitute grounds for the revocation by the milk control board of his license or for a fine as hereinafter provided, one or both at the discretion of the milk control board."* (Emphasis supplied) It is our opinion that the language just quoted clearly authorizes the Board to impose a fine as well as to revoke the license conditionally as was done in the case at bar.

While there is no provision in the Alabama Milk Control Board law which expressly authorizes the Board to order that restitution be made through the executive secretary and financial officer of the Board, we are of the opinion that the broad powers conferred on the Board and the duty imposed on it to see that the distributors pay the producer "the proper price" for his milk justifies this provision of the order of conditional revocation. We are aware of the holding in the case of Hammerberg v. Holloway, 131 Conn. 616, 41 A.2d 791, which seems to be contrary to our views. However, controlling statutory provisions of Connecticut are not identical with those of this state.

White Way not having availed itself of the means and measures supplied by the legislature for a direct attack upon the lawfulness and reasonableness of Order

No. 322 of the Board, as amended, which order as amended fixed the minimum prices that White Way should pay for milk procured from producer-licensees, White Way could not present the same grounds collaterally by way of defense to this proceeding which is based, in part, on alleged violations of said Order No. 322, as amended. Commonwealth v. Ziegler Dairy Co., 139 Pa. Super. 224, 11 A.2d 669; Pennsylvania Milk Control Com. v. Royale Dairy Co., 73 Pa. Dist. & Co.R. 431; Commonwealth v. Jackson, 345 Pa. 456, 28 A.2d 894; Royce v. Rosasco, 159 Misc. 236, 287 N.Y.S. 692.

The judgment of the trial court is reversed and the cause is remanded to that court with directions to enter a judgment modifying Order No. 348 of the Board so that the revocation of White Way's license be conditioned on the payment of the $1,000 fine and the sum of $1,948 as restitution to producer-licensees for underpayments during the month of January, 1954. Such payments to be made to the Board official named in Order No. 348 and within thirty days from the date of the entry of the trial court's decree of modification.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.