265 So.2d 569

James A. SIMPSON et al.

v.

James L. VAN RYZIN, individually, etc.

3 Div. 499.

Supreme Court of Alabama.

Aug. 10, 1972.

———◆———

William J. Baxley, Atty. Gen., William N. McQueen, Asst. Atty. Gen., for Director and Members of the State Personnel Board of the State of Alabama and said Board; Steagall & Adams, Ozark, and Rushton, Stakely, Johnston & Garrett and William B. Moore, Jr., Montgomery, for the Administrator and members of the Alcoholic Beverage Control Board of Alabama and said Board; James A. Simpson, Birmingham, pro. se., for appellants.

John P. Kohn, Calvin M. Whitesell and William R. Gordon, Montgomery, for appellee.

McCALL, Justice.

James L. Van Ryzin, the complainant, and appellee here, filed his bill of complaint in the Circuit Court of Montgomery County for a declaratory judgment against the members of the State Personnel Board, the Personnel Director of the Board, the Administrator of the Alabama Alcoholic Beverage Control Board, and the members of that Board. The bill seeks and prays for a declaration that the procedural rules of the Personnel Board pursuant to which the appellee, an employee of the Alcoholic Beverage Control Board (ABC Board), was dismissed from his classified position under the State Merit System Act, are unconstitutional and void, because they do not accord him procedural due process. Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 515, defines procedural due process:

"Procedural due process, broadly speaking, contemplates the rudimentary requirements of fair play, whether in a court or an administrative authority, which include a fair and open hearing before a legally constituted court or other authority, with notice and opportunity to present evidence and argument; representation by counsel, if desired; and information as to the claims of the op-

posing party, with reasonable opportunity to controvert them. (Citing authorities.)"

On April 8, 1971, the appointing authority, the Administrator of the ABC Board, notified the appellee in writing, in the form of a letter, that he was dismissed from his position, effective that date, specifying therein the reasons for dismissal. A copy of this letter of notification was sent to "State Personnel."

A hearing before the State Personnel Board was scheduled. However, before such hearing could be held, on May 14, Van Ryzin brought this declaratory judgment proceeding in the Circuit Court of Montgomery County, seeking, inter alia, to enjoin the ABC Board from dismissing him.

The trial court, in the declaratory judgment suit, made and entered a finding, among other things, that the letter of dismissal, dated April 8, 1971, did not set forth with sufficient particularity reasons for dismissal and that subsequent letters did not cure the defect, that rules of the Personnel Board were vague and indefinite as to the conduct required of an employee in order to avoid dismissal, and that the dismissal was an absolute, gross and arbitrary abuse of discretion on the part of the appointing authority. The trial court decreed that the appellee was entitled to a hearing before he could be dismissed, that the ABC Board forthwith restore him to his former position with back pay, that the State Personnel Board make and issue such rules that may be necessary to comply with its order and that it see that no punitive action is taken against the appellee inconsistent with this decree; further, that the State Personnel Board and all appointing authorities of the State of Alabama immediately promulgate reasonable rules and standards of conduct for employees. The court gave the appellants sixty days to act and report to it as to whether its decree had been carried out.

From the final decree in Van Ryzin's favor against all of them, the respondents appeal.

The controlling statute, Tit. 55, § 315, Code of Alabama, Recompiled 1958, provides in part:

"An appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby, for reasons stated in writing, served on the affected employee, and a copy furnished to the director, which action shall become a public record. The dismissed employee may, within ten days after notice, appeal from the action of the appointing authority by filing with the board and the appointing authority a written answer to the charges. The board shall if demand is made in writing by the dismissed employee within ten days after notice of discharge, order a public hearing and if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the board may determine. * * *"

Rule XIII, Sec. 2 (a) (b) and (c) of the Rules of the Personnel Board dealing with the subject of dismissals provides:

"(a) The appointing authority may remove any permanent employee of the classified service for cause only.

"(b) In all cases the appointing authority on or before the effective date shall furnish the affected employee with a written statement of the reasons for dismissal, a copy of which written statement, signed by the appointing authority, shall be furnished the State Personnel Director at the same time.

"(c) In any case of dismissal the affected employee may at any time, within ten days after the effective date of dismissal, request an investigation by the State Personnel Board. The State Personnel Board shall make an investigation in any manner it deems desirable or necessary in accordance with the Merit System Act, and shall file with the Director its report approving the dismissal or ordering the reinstatement of the employee."

The appellee insists, and the trial court held, that when the phrase "for cause" is included in a statute or rule relating to the dismissal of officials or employees, the law of the state dictates that the official or employee must be given a hearing before, rather than after, dismissal, for its timing, after such a summary discharge by the appointing authority does not satisfy due process requirements.

Under different circumstances, the general rule that an employee is entitled to a hearing before dismissal, as here relied on by the appellee, may hold true. See Parker v. Farish, 241 Ala. 127, 131, 1 So.2d 596, 600, where the court said:

"The generally accepted view, approved by this Court, is that when the power to remove an officer is for cause, there must be notice and a hearing and evidence taken and acted on. * * *" Touart v. State ex rel. Callaghan, 173 Ala. 453, 56 So. 211; State ex rel, McIntyre v. McEachern, 231 Ala. 609, 166 So. 36.

But where the plain, clear, and unambiguous language of the statute, and the rule in question, show a different legislative intent from that generated by the general rule of construction, and show that dismissal shall become effective when reasons therefor, stated in writing, are served on the employee and a copy is furnished the director, the general rule stated above must yield to express legislative will, notwithstanding the statute requires the appointing authority to state reasons in writing for dismissal, and the rule states that the appointing authority may remove the employee for cause only. The intent of the lawmakers to be gained from the language of the entire statute and rule is the controlling factor. It is clear to us from the express language of the statute and the rule, that both contemplate a dismissal by the appointing authority with a right to have a subsequent hearing before the Personnel Board, if desired. Unless a denial of due process of law, the appellee is not entitled to a prior hearing.

A public office which the legislature creates is not the property of the officer holder within the constitutional provision against depriving a man of property, nor does it ever become a vested right as against the right of the state to remove him. Heck v. Hall, 238 Ala. 274, 190 So. 280. And, one who desires to serve in an official capacity must submit to the orders and regulations under which he is admitted to service. Heck v. Hall, supra; Pool v. Williams, 280 Ala. 337, 194 So.2d 87; Waggoner v. Whatley, 282 Ala. 84, 87, 209 So.2d 370; State ex rel. Townsend v. Berning, 135 Ohio St. 31, 19 N.E.2d 155; State ex rel. Anderson v. Barlow, 235 Wis. 169, 292 N.W. 290.

Title 55, § 300, Code of Alabama, Recompiled 1958, provides that the Personnel Board may adopt rules, not inconsistent with the laws of the state, which may be necessary or appropriate to give effect to the provisions and purposes of the Merit System Act. Rules not in conflict with the laws of Alabama have the force and effect of law.

Therefore, if the rules, relating to dismissals, adopted by the Personnel Board are not in conflict with the laws of Alabama, those rules have the force and effect of law.

The plain language of both enactments here involved shows that the rule, relating to dismissals (supra) does not conflict with the statute relating to dismissals (Code § 315). On the contrary, the rule harmonizes with and compliments the statute. Both contemplate dismissal of a classified employee by the appointing authority, effective before any hearing on the charges is had. If the statute (Code § 315) is valid, the rule is valid, and will have the force and effect of law.

While in Pool v. Williams, 280 Ala. 337, 194 So.2d 87, this court was construing the statute, Tit. 55, § 316, Code of Alabama, Recompiled 1958, providing suspension as punishment for improper behavior on the part of a public employee, the court also was opining about the same issue as here

involved, that is, whether a merit system employee is deprived of his constitutional right of due process of law by imposing punishment without first affording him a hearing.

It is true that the punishment of suspension is not nearly so severe as the punishment of dismissal, because the former is temporary and the latter, more or less, permanent. Nonetheless, they each impose a loss of pay and a loss of public employment. In deciding whether or not due process of law is being denied, it is not so much the extent of what the employee is being deprived of, as it is whether or not his deprivation is being imposed contrary to a constitutional right first to be heard.

In Pool v. Williams, supra, the employee was suspended for thirty days by the appointing authority pursuant to § 316. He invoked declaratory relief, contending not only that he was entitled to file with the Personnel Board a written answer to the charges preferred against him as § 316 provides for, but also that he was entitled to a hearing before the Board on the merits so that the Board could decide whether his suspension was justified. Section 316 provides for the appointing authority to peremptorily suspend without pay and without the right of a hearing. The statute makes no other mention of a hearing. The employee cited Sections 6, 13, 10, and 9 of the Constitution of 1901 to support his contention that he was entitled to a hearing on the merits. In answer the court said in part:

"* * * We do not think that § 316, if construed to deny a hearing on the merits of the reasons for suspension, violates either of those sections of the Constitution.

"* * * By being an employee of the state, appellee accepts the provisions of law governing his employment. § 316 is one of those provisions. To suspend an employee in conformity with the provisions of law governing his employment does not deprive the employee of right

or property without due process of law." .Pool v. Williams, 280 Ala. 337, 339, 194 So.2d 87, 88.

That decision makes the further pertinent observation of the law which we think is applicable to Code § 315 as well as § 316 and that is:

"Amendment 88, proclaimed ratified December 19, 1951, Code of Alabama Recompiled 1958, Vol. 1, page 410, provides that all state personnel laws 'now in effect,' that are not in conflict with Amendment 88, shall continue in effect until they are amended or repealed as provided by law. § 316 has not been repealed or amended since ratification of Amendment 88, and because of that amendment, if for no other reason, § 316 does not violate the constitutional provisions relied on by appellee."

Code § 315, likewise, has not been repealed or amended since ratification of Amendment 88. For the same reason quoted above, neither does § 315 violate the constitutional provisions here relied on by the appellee.

We conclude therefore that the fact that Code § 315 and the dismissal rule do not provide for a hearing before the appointing authority can order dismissal, does not violate the due process guaranty. We further point out that in § 315 of Title 55, the legislature has set out in considerable detail provisions for a timely hearing on the merits before the Personnel Board after the appointing authority has notified a classified employee of his dismissal, to determine if it was justified.

It also is to be observed that § 315 provides for removal of persons in the classified service upon charges filed by any officer, citizen, or taxpayer of the state with the director. In the latter instance, notice and a hearing are provided for before final action, disciplinary or otherwise, is taken by the Board on the charges. The fact that the legislature did not provide for a hearing before dismissal by an ap-

pointing authority, but did provide for one after filing charges by any officer, citizen, or taxpayer of the state, leads us to conclude that the legislature did not intend to provide for a hearing before a dismissal by the appointing authority, and we hold, as we have already indicated, that to discharge an employee in conformity with the provisions of law governing his employment does not deprive the employee of right or property without due process of law. Pool v. Williams, 280 Ala. 337, 194 So.2d 87.

Procedures comparable to those followed in the instant case were upheld in Bodmer v. Police Mut. Aid Ass'n, 94 Utah 450, 453, 78 P.2d 640, 642, where the court said:

"*  *  * [I]t is true that where the scheme of the statute apparently permits discharge, but allows an appeal from such discharge to a commission, that the discharge may be made without previous notice and hearing. It is then a complete discharge, subject to review. It is within the power of the Legislature to determine whether the discharge shall be conditioned on notice and hearing or whether it may be completed, subject to a review by a commission where the officer may demand his hearing. * * *"

The appellee also contends that the appointing authority did not give sufficient notice or reason in his letter of April 8, 1971, to inform him of what he would be called upon to defend and that the information subsequently furnished by letters came too late and could not relate back and cure any defect in the first notice, because sufficient, clear, and definite reasons must have been given in the first notice.

Before this suit was filed the appellee requested in writing further information concerning the details of his dismissal. In his reply the appointing authority undertook to elaborate on the details relating to each specific charge enumerated in his original letter of dismissal, dated April 8, 1971. No new or additional charges were filed against the appellee however. Wheth-

er to be treated as an amendment to the reasons for dismissal set forth in the original notification given by the appointing authority, or as a form of discovery, such elaboration did not add any more efficacy to the averments, as statements of improper conduct, than their general tenor already expressed in the letter of April 8, 1971, to-wit, (1) disgraceful conduct, (2) violation of departmental rules, (3) use of state equipment for other than state business, (4) falsifying personal leave records, and (5) lack of cooperation.

■  We think the appointing authority's original letter was sufficient to inform the appellee of the reasons why he was dismissed.

In 67 C.J.S. Officers § 66b, p. 275, we find the following supporting statement:

"The charges or reasons given must be sufficient in their nature to warrant removal, and sufficiently specific to apprise the officer of what he has to meet. They need not, however, possess the formality and exactness required in court proceedings, or be prepared with the formality necessary in an indictment, and it is not necessary that the cause assigned for removal should be stated in the precise language of the statute. An officer desiring further details than those stated in the written charges should file a demand for further particulars. The proceedings may be amended by inserting additional charges if the officer be given proper opportunity to meet them. *  *  *"

■  The Merit System Act delegates administrative authority to the Personnel Board, to make rules, not inconsistent with existing laws, to conduct investigations and in the course thereof to compel the attendance of witnesses and the production of evidence, and generally to exercise whatever administrative measures may be necessary to effect the purpose of the Merit System Act; this is not considered as being a delegation of power to enact laws, or of

judicial functions, but merely a delegation of administrative powers and duties. 15 Am.Jur.2d, Civil Service, § 6, p. 468. This court has recognized that procedures before the Personnel Board are purely administrative. Heck v. Hall, 238 Ala. 274, 282, 190 So. 280. The law does not require that charges filed before administrative boards be drawn with the same nice refinements and subtleties as pleadings in a court of record. White Way Pure Milk Co. v. Alabama State Milk Control Board, 265 Ala. 660, 664, 93 So.2d 509.

67 C.J.S. Officers § 66a, p. 274 states:

"While sometimes regarded as the exercise of a judicial or quasi-judicial function, proceedings by the executive branch of the government in the exercise of a power to remove or demote public officers or employees are usually regarded as administrative rather than judicial, although the power may be exercised in a judicial way; and, although a legislative body has the power to approve or reject the executive act, it does not thereby lose its administrative character. Proceedings of this character are regarded as remedial rather than an penal, and are not governed by the strict rules of court procedure; but the regularity of such proceedings must be considered along with the intrinsic nature of administrative bodies and the fundamental purposes for which they are created."

■ If the reason or cause, as alleged, in and of itself constitutes sufficient ground for removal, which we think to be the case here, there should be no valid objection to its being elaborated upon by amendment or discovery, at least to the extent to which those procedures are available in judicial proceedings. For the reasons above stated, we disagree with the appellee's contention that subsequent clarification, by giving details of the charges cannot relate back to the first notice.

■ Appellee contends next that any rule allowing dismissal "for cause" is void for vagueness, and that § 315 is subject to the same criticism because it sets out that an employee may be dismissed for the "good of the service" and that both phrases are insufficient to adequately apprise an employee of what conduct he is to guard against.

The parties stipulated that the case be submitted on, among other matters, the Handbook for Employees, the contents of which is set out in the record.

Among other acts of misconduct, this handbook lists the following: disgraceful conduct on or off the job, violation of rules or regulations of your department, use of state equipment or supplies for any other than for state business, claiming reimbursement for money not actually spent in connection with state business, and lack of cooperation. We find no substantial difference between those last enumerated reasons and causes for dismissal, and those stated in the appointing authority's letter of April 8, 1971.

Understandably, we express no opinion as to the truthfulness of the reasons or the cause for the appellee's dismissal. That is an administrative function for the Personnel Board. What we do say though, is that those charges allege conduct that an ordinary intelligent person should know constitutes improper conduct and that should be refrained from. So in this case, the phrase "for cause," coupled with the more definite admonitions in the handbook, was ample notice to forewarn the appellee of what conduct he was to guard against.

We come now to the question of whether the trial court properly took jurisdiction of this declaratory judgment suit. We think it did. In State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 633, 11 So.2d 342, 345 (1943), the court made the following statement, which is relevant to our present inquiry:

"But we have held that when an officer of the State is confronted with an

uncertain problem of what the law means which requires certain acts on his part, or whether the law is valid, and he proposes to pursue a certain course of conduct in that connection, which would injuriously affect the interests of others who contend that he has no legal right thus to act, there is thereby created a controversy between them and the Declaratory Judgments Act furnishes a remedy for either party against the other to declare the correct status of the law. The purpose is to settle a controversy between individuals, though some of them may be State officers. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479."

In accord with the above case are Alabama State Milk Control Board v. Graham, 250 Ala. 49, 54, 33 So.2d 11 (1947) and Foshee v. Mitchell, 270 Ala. 533, 120 So.2d 741.

In the instant case, we must reconcile the right to relief under the Declaratory Judgments Act with the doctrine of exhaustion of administrative remedies, which limits the exercise of a court's jurisdiction over parties and subject matter and which has been described as follows:

" 'Even though a court may have jurisdiction of the subject matter of a dispute, it may decline to exercise it until administrative remedies have been exhausted. Indeed, to exercise that jurisdiction would be an abuse of discretion. The desire to avoid interference with administrative regulations unless it is certain that they will not be modified to satisfy the complainant, and the desire for expert determination insofar as possible, have led to the doctrine that the suit is premature and the issue nonjusticiable so long as the possibility of administrative relief lies unexplored.' " Malone Freight Lines, Inc. v. United States, 204 F.Supp. 745, 751 (N.D.Ala. 1962), quoting 51 Harvard Law Review, pp. 1251, 1261 (1938).

Although administrative remedies must generally be exhausted before resort can be had to the courts, such exhaustion will not be required where the issue to be decided is solely a matter of law, not dependent upon disputed facts. Borough of Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 240 A.2d 8 (1968); Louisville & Jefferson County Planning & Zoning Comm. v. Stoker, 259 S.W.2d 443 (Ky.Ct.App.1953). Among the specific instances in which exhaustion has been held not necessary are the following: where a statute, ordinance, or regulation is charged to be void on its face, or where there is a question of its applicability, Diggs v. State Bd. of Embalmers & Funeral Directors, 321 Mich. 508, 32 N.W.2d 728 (1948); Fischer v. Bedminster Tp., Somerset County, 5 N.J. 534, 76 A.2d 673 (1950), where there is a defect in the power of the agency to act in any respect, State ex rel. Barbuto v. Ohio Edison Co., 16 Ohio App.2d 55, 45 Ohio App.2d 159, 241 N.E.2d 783 (1968), affirmed 16 Ohio Misc.2d 54, 242 N.E.2d 562, where administrative review procedures are legally inadequate, Ryan v. Hofstra University, 67 Misc.2d 651, 324 N.Y.S.2d 964 (1971).

With these factors in mind, we are of the opinion that the circuit court properly exercised jurisdiction of this declaratory judgment suit. Although appellee disavows any intention of attacking the Merit System Act, the instant case involves a question of the construction and validity of a statute and of an administrative rule which has the force of a statute, a matter for which the courts are uniquely suited. As the State Personnel Board is not designed to be a judicial body to pass on such legal questions, further administrative proceedings would be an idle gesture. The court did not err in overruling the appellants' demurrer to the bill of complaint.

So much of the trial court's final decree as overrules the demurrer of the appellants filed to the bill of complaint is affirmed. The said decree is otherwise reversed, and

the cause is remanded for the entry of a decree in accord with this opinion.

Affirmed in part, reversed in part and remanded.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, and BLOODWORTH, concur.

MADDOX, J., concurs specially.

MADDOX, Justice (concurring specially).

The really tough question for me to resolve in this case was whether the procedure set out in Tit. 55, § 315, Code, 1940, providing for a *post*-termination hearing comports with procedural due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States. After a study of the interpretations made by the Supreme Court of the United States concerning the rights of public employees, I am convinced that the state and federal governments, even in the exercise of their internal operations, do not constitutionally have the complete freedom of action enjoyed by a private employer. Cafeteria & Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 897, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). During the past decade, I note a definite trend to protect "interests" of public employees. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court of the United States said that "(w)hen protected interests are implicated the right to some kind of prior hearing is paramount."

Because of some of the language of the *Roth* case, I do not believe that Van Ryzin's termination could *become effective* until after he had a hearing. However, I do not believe *Roth* is authority for the proposition that the Alabama statute which grants to a dismissed employee the right to demand a *post*-termination hearing fails to accord procedural due process in every instance.

Most of the Civil Service statutes with which I am familiar, including that of the Federal Government, only provide for a *post*-termination hearing. Many Teacher Tenure Statutes do not provide for a *pre*-termination hearing. It would probably be wise and preferable if these statutes contained provisions which would grant a public employee the right to a hearing prior to his discharge. I find no decisional law, however, which has interpreted the Fourteenth Amendment to require such a procedure. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it was held that a pre-termination evidentiary hearing was necessary to provide a welfare recipient with procedural due process. There, the Supreme Court rejected the argument of the welfare officials that the combination of the existing post-termination "fair hearing" and informal pre-termination review was sufficient. Similar results were reached in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 and Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. These Supreme Court cases are very persuasive that when protected interests of "liberty" and "property" are implicated the right to some kind of prior hearing is paramount. Here, Van Ryzin's "liberty" interest was implicated. The appointing authority, in terminating Van Ryzin, charged him with dishonesty. Since his good name, reputation, honor or integrity was at stake, he was entitled to notice and an opportunity to be heard. Board of Regents v. Roth, supra. Under *Roth*, I think that before his termination could *become effective* with regard to his "liberty" interest, he was entitled to a hearing. There is another reason why I think that the termination was not effective on the date the first notice was sent and that reason is that the first notice was woefully deficient, even under the most liberal construction of what would constitute "notice."

The Fourteenth Amendment's procedural protection of "property" is a safeguard of the security of interests that a person has already acquired in specific benefits

—here, Van Ryzin's "right" to continued employment. I use the word "right" because I think the Supreme Court of the United States has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights. See Board of Regents v. Roth, supra. But as said in *Roth,*

> "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

Van Ryzin's "property" interest in continued employment was created by the Merit System Act and the regulations promulgated pursuant thereto. The Act and regulations defined how his "property" interest could be terminated. Therefore, I am not prepared to say that the statutory procedure, which provided only for a *post*-termination hearing, if demanded, fails to comport with procedural due process, insofar as Van Ryzin's "property" interest is concerned.

In Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2717, 33 L.Ed.2d 581 (1972), Mr. Chief Justice Burger, in a special concurring opinion, said:

> "I concur in the Court's judgments and opinions in Perry and Roth, but there is one central point in both decisions that I would like to underscore since it may have been obscured in the comprehensive discussion of the cases. That point is that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law. The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administra-

tive or academic hearing on the cause for nonrenewal of his contract. Thus whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law. The Court's opinion makes this point very sharply:

> " 'Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .' Board of Regents v. Roth, 408 U.S. 564, at p. 577, 92 S.Ct. 2701, at p. 2709, 33 L.Ed.2d 548.

> "Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on a question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing prior to nonrenewal of his contract. If relevant state contract law is unclear, a federal court should, in my view, abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law."

Therefore, I do not believe that Van Ryzin was denied procedural due process insofar as his "property" interest was concerned.

The wisdom of changing the Merit System Law, the Teacher Tenure Law or other laws governing the retention or dismissal of public employees to provide for a *pre*-termination hearing addresses itself to the Legislature. The Executive could also grant a request for a *pre*-termination hearing, in my judgment, where requests were made. The function of the Judiciary is to review, when called upon, the action of the Legislature and the Executive to see if it conforms to the Constitution.

BLOODWORTH, Justice, expresses his concurrence in most of the views expressed by Mr. Justice MADDOX in the foregoing special concurrence.