383 So.2d 511 (1978)
DELVIEW MEADOW GOLD DIVISION BEATRICE FOODS COMPANY et al.
v.
ALABAMA DAIRY COMMISSION and Associated Milk Producers, Inc.
SC 2716.
Supreme Court of Alabama.
June 30, 1978.
Rehearing Denied August 4, 1978.
After Remand September 28, 1979.
Rehearing Denied May 9, 1980.
*512 Oakley Melton, Jr., and Curtis H. Springer, Montgomery, for appellants.
Charles M. Crook, Montgomery, for appellee Alabama Dairy Commission.
Henry C. Chappell, Jr., Montgomery, for appellee-intervenor Associated Milk Producers, Inc.
PER CURIAM.
This is an appeal by Delview Meadow Gold Division Beatrice Foods Company and others (hereinafter referred to as Distributors) involving Order 2-76 of the Alabama Dairy Commission. The order was previously declared valid by this court in Alabama Dairy Commission v. Delview Meadow Gold Division, Beatrice Foods Company et al., 345 So.2d 278 (Ala.1977).
Under current regulations promulgated by the Dairy Commission, milk producers are paid a Class I price by milk distributors for that portion of milk sold by the distributors for consumption as fluid milk. A much lower Class II price is paid for other milk purchased from the producers which is usually used in making cheese and other milk products. Order 2-76 changes this classification and pricing structure for buttermilk which is made from milk powder rather than fluid milk.
In making buttermilk, distributors may choose to use either fluid milk or cheaper milk powder. However, under the provisions *513 of Order 2-76, if a distributor receives surplus fluid milk from a producer and the distributor then manufactures and sells buttermilk made from milk powder, he must pay the producer for an equivalent portion of the producer's otherwise surplus milk at the Class I price as though such fluid milk had been used in making the buttermilk.
Order 2-76 further provides that distributors may pass increased costs resulting from the regulation on to consumers through an increase in the wholesale price of buttermilk.
The Dairy Commission enacted Order 2-76 on January 16, 1976. On February 9, 1976 the Distributors filed a timely petition for writ of certiorari in the Montgomery County Circuit Court seeking a review of the new regulation. It was alleged that Order 2-76 was invalid and violative of the Due Process Clause of both the state and federal constitutions.
On February 23, 1976 the trial court entered an order suspending the operation of Order 2-76 pending a final determination on its validity. The order further required the Distributors to monthly pay into an escrow fund an amount equal to the difference between what was actually paid to producers and what would have been paid to them if Order 2-76 were in effect.
On April 7, 1976 the Montgomery County Circuit Court declared Order 2-76 invalid as being beyond the powers of the Dairy Commission. The decree was based upon this court's decision in Dark's Dairy v. Alabama State Milk Control Board, 278 Ala. 693, 180 So.2d 527 (1965). The Dairy Commission then appealed the circuit court's ruling to this court.
On appeal the Distributors asserted that Dark's Dairy was controlling. They further argued the previously asserted "due process" claim as well as alleged violations of the Commerce Clause of the federal constitution and of the "equal protection" provisions of both the state and federal constitutions.
On April 15, 1977 a majority of this court reversed the circuit court's order, holding that Dark's Dairy was not controlling, and reversed and remanded the cause. This court did not address the asserted "due process" or "commerce clause" or "equal protection" claims in that opinion. These various constitutional challenges were once again raised in the Distributors' application for rehearing which was denied on May 20, 1977.
The Distributors thereafter filed the following motions in Montgomery County Circuit Court: motion to set case for hearing on constitutional questions; motion to remand to the Dairy Commission; and motion to refund escrow fund (to the Distributors) or, in the alternative, motion to hold entire escrow fund intact pending completion of all judicial proceedings. In addition to these various motions, the Distributors filed an amendment to their original petition for certiorari which once again raised "due process," "commerce clause," and "equal protection" claims.
All motions and the amendment were denied by the trial court on June 16, 1977, and the escrow funds were disbursed. Notice of appeal to this court was filed by the Distributors from the June 16, 1977, order. A motion for summary dismissal was subsequently filed by the Dairy Commission on the grounds that the issues raised on this appeal were before the court in the prior appeal involving Order 2-76. The cause was thus submitted on the motion and the merits.
Briefly stated, the Distributors make the following contentions on this appeal:
(1) Order 2-76 places a substantial burden on interstate trade of milk powder in violation of the Commerce Clause of the federal constitution;
(2) Order 2-76 violates the Distributors' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the federal constitution and similar provisions of the state constitution; and
(3) The June 28, 1976, trial court order was entered at a time when that court was without jurisdiction to make any decree affecting *514 the rights of the parties and was therefore null and void.
Title 22, section 226, Code of Alabama 1940 (§ 2-13-63, Code 1975), establishes the procedure for review of Dairy Commission orders. This statute provides in pertinent part as follows:
"§ 226. Certiorari to review.Any person affected by any order or action of the board, who deems himself aggrieved by any such order or act may within ten days after receiving notice of any such action or order, have such order, or action reviewed by a writ of certiorari by filing in the circuit court of the county wherein said action or order was taken or made, a verified petition setting out the specific order or action, or any part or parts thereof whereby said person deems himself aggrieved, and such court shall only consider such matters as contained in the petition. . . . [N]o new or additional evidence shall be taken or heard by the court. . . . Upon final hearing, such court shall have jurisdiction to reverse, vacate or modify the order complained of, if upon consideration of the issues before the court, the court is of the opinion the order is unlawful or unreasonable."
Under the clear wording of this statute, review by the circuit court of orders of the Dairy Commission must be limited to a consideration of the evidence presented in the hearing before the Dairy Commission and the issues contained in the petition for certiorari. No similar provision is made in Title 22, section 226, nor in any other statute specifically relating to the Dairy Commission, concerning review by this court of circuit court judgments. However, we have stated that on appeal of Dairy Commission actions this court is governed by the same rules of review as was the circuit court. White Way Pure Milk Company v. Alabama State Milk Control Board, 265 Ala. 660, 93 So.2d 509 (1957). Thus, in the present appeal, this court may only consider evidence placed in the first instance upon the record developed before the Dairy Commission and issues raised thereafter in the petition for certiorari to the circuit court.
As previously stated, the Distributors did not assert their "commerce clause" and "equal protection" claims in the original petition for certiorari to the circuit court. Thus, under this court's interpretation of our rule of review under Title 22, section 226, we decline to consider these two contentions for the first time on this appeal.
We note that Title 7, section 1072, Code of Alabama 1940 (§ 6-6-640, Code 1975), which governs the procedure for amending petitions for certiorari, states, in pertinent part, the following:
". . . any of the pleadings in such proceedings may be amended as often as occasion may require to attain the ends of justice, and by striking out parties and adding new parties; and upon the issues thus presented, the court shall award the relief, if any, to which the petitioner is entitled."
This statute pertains only to amendments while the "proceedings are in progress" and not to amendments after judgment. Ex parte Hennies, 33 Ala.App. 229, 34 So.2d 17 (1947).
Although we specifically decline to consider the merits of the Distributors' constitutional challenges to Order 2-76 based upon alleged "commerce clause" and "equal protection" violations, this cause must nevertheless be remanded to the circuit court for its consideration of a single issuethe Distributors' "due process" claim. We reach this result because the Distributors raised this constitutional claim in the original petition for certiorari. When the circuit court ruled that Order 2-76 was invalid, it did not need to address the "due process" issue because it held that Dark's Dairy was controlling. Upon review, this court did not address the alleged "due process" violation nor did we remand to the circuit court for its consideration thereof. We therefore believe this cause must be remanded now for a consideration by the circuit court of the merits of the Distributors' federal and state "due process" claim because this issue, though properly presented, *515 has never been ruled upon by either the circuit court or this court.
The final contention made by the Distributors on this appeal, that the circuit court order of June 28, 1976, continuing the escrow fund arrangement created by that court on February 23, 1976, was null and void, is without merit.
"In Barran v. Roden, 263 Ala. 305, 307, 82 So.2d 398, 399 (1955), this Court set out a limitation on the rule that, after an appeal is taken, the trial court cannot rule on any matter involving the appeal:
`. . . The rule is stated to be that after an appeal is taken, the lower court may proceed in matters which are entirely collateral to that part of the case which is taken up (by the appeal) but it can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court.' This is a limitation on the rule that after an appeal is taken the trial court cannot, pending that appeal, pass upon any matter involved on the appeal. . . .
`As to those matters which are entirely collateral to the questions involved on appeal, the court and parties are free to proceed notwithstanding the appeal if taken, or without affecting the right to appeal if not then taken. 4 C.J.S. Appeal and Error § 212e, p. 401.'
"Accord: Francis v. Scott, 260 Ala. 590, 72 So.2d 93 (1954); Ex Parte Taylor, 251 Ala. 387, 37 So.2d 656 (1948); Ex Parte City Council of Montgomery, 114 Ala. 115, 14 So. 365 (1896)."
Osborn v. Riley, 331 So.2d 268, 271 (Ala.1976).
Accordingly, this cause is remanded to the circuit court for a consideration of the Distributors' claim that Order 2-76 violates the Due Process Clause of the federal constitution and similar provisions of the state constitution.
REMANDED WITH DIRECTIONS.
TORBERT, C. J., and BLOODWORTH, FAULKNER, JONES and ALMON, JJ., concur.
MADDOX, J., with whom SHORES and BEATTY, JJ., join, dissents.
EMBRY, J., dissents.
MADDOX, Justice (dissenting).
On the original appeal of this case, Ala. Dairy Com'n v. Delview Meadow Gold, etc., Ala., 345 So.2d 378 (1977), Delview spent several pages of its brief arguing that the trial court's order invalidating Order No. 2-76 was correct because "[a] state regulatory agency is prohibited from erecting trade barriers which are clearly a burden on interstate commerce between the several states."
On application for rehearing, Delview argued:

"NUMEROUS LEGAL AND CONSTITUTIONAL ERRORS IN PER CURIAM OPINION
"At the very outset, the per curiam opinion rendered herein permits Order 2-76 of the Alabama Dairy Commission to discriminate against the interstate sale of out-of-state powdered milk to milk distributors in Alabama in violation of the Commerce Clause of the United States Constitution, Article 1, § 10, clause 2 and § 8, clause 3. The per curiam opinion is also contrary to the statutory and case law of Alabama and is contrary to the principles of law enunciated in cases from the Supreme Courts of the States of North Carolina, Florida, Delaware, Pennsylvania, New Jersey, Mississippi, Montana, Kentucky, Arizona and Colorado. The per curiam opinion is also expressly contrary to the decisions of the United States Supreme Court in Baldwin v. Seelig, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032; Hood v. DuMond, 336 U.S. [525] 527, 69 S.Ct. 657, 93 L.Ed. 864 [865]; Dean Milk Co. v. City of Madison, Wisconsin, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329; Polar Ice Cream and Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389; and Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345.

*516 "The per curiam opinion would also permit a violation of Appellees' constitutional rights under the due process clauses of the Constitutions of Alabama and the United States. Arcadia Dairy Farms, Inc., 289 N.C. 456, 223 S.E.2d 323.

ORDER 2-76 VIOLATES THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION
"Although the constitutional question concerning violation of the Commerce Clause by Order 2-76 was thoroughly argued in briefs, discussed in detail with the Court on oral argument, and submitted as an issue in this case, the per curiam opinion fails to mention the Commerce Clause or even attempt to distinguish this case from the foregoing decisions of the United States Supreme Court and the highest Courts of ten sister states. . . ." [Emphasis added.]
I am of the opinion that arguments on the Federal constitutional question were initially considered, but unfortunately, as it turns out, were not addressed by this Court in the original opinion. In other words, I am of the opinion that the Federal constitutional claim, even though not written to, was an issue in the original appeal and was decided adverse to Delview. Therefore, I naturally dissent.
SHORES and BEATTY, JJ., concur.

AFTER REMAND
FAULKNER, Justice.
Order 2-76 of the Alabama Dairy Commission (the buttermilk regulation") is before us again. Delview Meadow Gold appeals from an order of the Circuit Court of Montgomery County which held that Order 2-76 did not violate the due process provisions of the United States and Alabama Constitutions. We reverse.
On June 30, 1978, this case was remanded to the Circuit Court with directions that the court consider the claim made by Delview Meadow Gold and other distributors of dairy products that Order 2-76 of the Alabama Dairy Commission (ADC) violated the due process clause of the United States Constitution and similar provisions in the Alabama Constitution of 1901. Delview Meadow Gold Division Beatrice Foods Co. et al. v. Alabama Dairy Commission, 383 So.2d 511 (Ala.1978). The Circuit Court delayed the hearing and ruling in this case until the United States Court of Appeals for the Fifth Circuit rendered its decision in Dairymen, Inc. v. Alabama Dairy Commission, 584 F.2d 707 (1978), where it held Alabama's milk quota regulations in ADC Order 3-75-1, to which Order 2-76 is an amendment, unconstitutional since those regulations conflict with the commerce clause of the Constitution. On March 12, 1979, the lower court issued a decree holding that ADC Order 2-76 did not violate the due process provisions of the United States and Alabama Constitutions.
Simply stated, Order 2-76 requires that if a milk distributor receives surplus milk (Class II milk) from the farmer-producer, the distributor may choose to use it in making buttermilk or not, but if he makes and sells buttermilk made from milk powder, he must pay for an equivalent portion of the surplus milk just as though such surplus milk had been used in making the buttermilk; that is, at the Class I price.[1] A carryover provision allows the farmer-producer, when he has not shipped surplus milk equal to his share of the distributor's sale of buttermilk made from milk powder, to receive a credit which can be carried until he actually ships surplus milk.
*517 The distributors contend that Order 2-76 deprives them of their property without due process of law by requiring them to make compensatory payments to milk producers for surplus milk they never actually use in making buttermilk. They also argue that Order 2-76 should be held unconstitutional and void since it is merely an amendment to Order 3-75-1, determined to be unconstitutional by the United States Court of Appeals.
A state may not act to deprive any person of his property without due process of law. U. S. Const. amend. XIV; Ala. Const. art. 1 § 6. ADC Order 2-76, however, deprives distributors of their property, money, in a manner that is arbitrary and unreasonable. The distributors' money is taken by the ADC to be paid to producers for milk presently or subsequently received but never used in making the buttermilk. Although the money taken is designed as "compensatory payments" such payments are effectively a tax or penalty for the benefit of the producers on the distributors for their use of milk powder. Other courts have recognized that payments labeled compensatory may be more accurately described as penalties on milk distributors. See, Kass v. Brannan, 196 F.2d 791 (2d Cir. 1951). The ADC by this penalty arbitrarily and unreasonably discriminates against a legitimate production process.
In Appeal of Arcadia Dairy Farms, Inc., 289 N.C. 456, 223 S.E.2d 323 (1976), the Supreme Court of North Carolina in considering the North Carolina Milk Commission's amendment to Milk Marketing Order No. 2, requiring distributors reconstituting milk for Class I sales to pay to producers selling milk to other distributors in the market area an amount equal to the difference between the Class I and normal Class II prices, stated:
"To interpret GS 106-266.8 [the amendment] as conferring upon the Commission power to require a distributor of `reconstituted' milk to make such payments for the benefit of producers, with whom it has no dealings, would also give rise to serious doubt as to whether such exaction would be a violation of Article I, § 19, of the Constitution of North Carolina, which provides, `No person shall be * * * in any manner deprived of his * * * property, but by the law of the land.'"
The ADC lacked authority under Title 22, § 223(1), Code of Alabama (Recomp.1958) (as amended) to promulgate an order that in effect requires distributors to pay the premium Class I price for milk not used in a premium product. See Code 1975, §§ 2-13-50 and 51. The distributors will have to pay the Class I price for milk whenever they make buttermilk from milk powder irrespective of whether they do so for greater profit, convenience, because no fresh milk is available, or only sporadically. The milk that they are required to purchase for premium prices, even though it is not used in making buttermilk, is actually milk which is produced in excess of what is needed for fluid milk consumption and thus should come under the lower minimum price, Class II price. Whether the ADC computes the amount of milk for which the distributors pay the Class I price, the fluid milk price, on the basis of any one of the three methods allowed by the statute, Order 2-76 is still arbitrary and unreasonable and thus violates the due process provisions of the Constitution of the United States and the Constitution of Alabama 1901.
We hold that the unconstitutionality of Order 2-76 relates back to the date of its adoptionnot from the date of this decision.
REVERSED AND RENDERED.
TORBERT, C. J., and BLOODWORTH and JONES, JJ., concur.
SHORES and BEATTY, JJ., concur in the result.
MADDOX, EMBRY and ALMON, dissent.
SHORES, Justice (concurring in the result).
I concur in the result only because I think we are bound, at least by principles of comity, to follow the U. S. Fifth Circuit Court of *518 Appeals' view of the federal constitutionality of the involved regulations.
BEATTY, J., concurs.
MADDOX, Justice (dissenting).
This case, involving Pricing Order 2-76, has had a long and tortuous journey. The facts are sufficiently set out in an opinion, which I authored, in Alabama Dairy Commission v. Delview Meadow Gold, 345 So.2d 278 (Ala.1977). Joining me then were Chief Justice Torbert, Justices Almon, Shores, Embry and Beatty. Justice Jones concurred in the result, and Justices Bloodworth and Faulkner, dissented. On that appeal, a majority of this Court upheld the Order 2-76, and as I expressed in a dissenting opinion, on June 30, 1978, all the constitutional claims advanced by the distributors on that first appeal were submitted and decided adverse to them; nevertheless, a majority (5-4) of this Court allowed the distributors to litigate again in the circuit court what they dubbed a "due process" claim. I must respectfully point out that the "due process" issue was presented by the distributors in their original petition for certiorari in the circuit court wherein they sought review of Order 2-76, and I must further point out that the constitutional issue was extensively argued in brief on the first appeal in this case.
While the matter was pending before the circuit court, an entirely different action was proceeding through the Federal District Court, which culminated in a decision by the Fifth Circuit Court of Appeals that Alabama Dairy Commission Order 3-75-1, to which Order 2-76 was an amendment, was unconstitutional as violative of the interstate commerce clause. Dairymen, Inc. v. Alabama Dairy Commission, 584 F.2d 707 (5th Cir. 1978). As I understand it, the Dairy Commission no longer enforces that order; nevertheless, the result reached today will determine who is entitled to more than 2 million dollars involved in Order 2-76.
The circuit court found that, irrespective of the decision in Dairymen v. Alabama Dairy Commission, supra, the distributor's "due process" claim was not meritorious. I think that the circuit court was correct. I personally think that the Fifth Circuit decision is in error, because I do not believe it follows prior decisions of the Supreme Court of the United States in milk regulation matters; nevertheless, even assuming the correctness of the Fifth Circuit decision, I do not believe that Order 2-76 would be invalid. In short, I think that the trial judge could have found that the purpose and goal of Order 2-76 was employed, not solely for the economic well-being of producers, but was designed also for consumer protection, in that, unregulated sales of buttermilk made from powder would be destructive by reason of the potential disturbance of the balanced distribution structure in Alabama built up during years of regulation. The uncontradicted testimony was that Alabama was a "deficit" milk producing state, and that failure to regulate the distribution and sale of buttermilk made from powder would aggravate this situation. Unless Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), has been overruled, I thought a state could guarantee a fresh, wholesome supply of milka legitimate consumer interest.
"Due process" means fundamental fairness. Under Order 2-76, the distributors were not forced to buy milk they did not need, they were only required to pay a higher price for Class II milk if they bought and used powder, based upon the amount of buttermilk made from powder. I think it only incidental that the powder came across state lines. Order 2-76 would have required the same procedure for powder purchased in Alabama. In short, I see no conscious attempt to burden interstate commerce.
Under Order 2-76, the distributors were allowed a regulated price for the buttermilk which the distributors made from powder; therefore, they received an economic advantage of buying powder at a cheaper price and getting a higher regulated price from the consumer. Using a balancing approach, I would uphold the trial judge's finding that the "due process" clause was not violated. *519 In Great Atlantic and Pacific Tea Co., Inc. v. Cottrell, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976), the Supreme Court stated that where the purpose and goal of the restriction employed is consumer protection and not the economic well-being of the present milk industry, and the means chosen do not involve an attempt to control commerce in another state or otherwise to produce an extraterritorial effect, and does not operate to discriminate against or place an embargo on interstate commerce, the obvious local interest at stake outweighs whatever national interest there might be in the prevention of the state restrictions having an incidental impact on interstate commerce. Furthermore, I do not find that Order 2-76 is substantially different in its effect from milk orders issued by other states or by the federal government dealing with buttermilk. I do not find that it is unfair to the distributors. Consequently, I respectfully dissent.
EMBRY, J., concurs.
NOTES
[1] Class I milk prices, fluid milk prices, are higher than Class II milk prices, the prices paid for surplus milk. Class I milk or fluid milk includes all homogenized milk, pasteurized milk, premium milk, low fat milk, skim milk, buttermilk, chocolate milk, flavored milk and milk drinks, buttermilk produced from non-fat milk powder, and shrinkage, excluding swill returns, which exceed 2% if milk is received on farm weights or 1½% if milk is received on other than farm weights. Class II milk includes milk used in the plant for cottage cheese, soft serve mixes, sour cream, yogurt, dips, dressing, shrinkage, swill returns, dumpage, fluid cream products containing 10% or more butterfat, and milk delivered to non-Grade A plants.