Jack THOMPSON, Plaintiff-Appellee,

v.

Ray D. BASS, etc., et al., Defendants,

Dan H. Turner, etc.,
Defendant-Appellant.

Nos. 76–4475, 77–2292.

United States Court of Appeals,
Fifth Circuit.

May 14, 1980.

Rehearing Denied June 16, 1980.

Robert S. Lamar, Jr., Clyde C. Owen, Jr., Montgomery, Ala., for defendant-appellant.

Alvin T. Prestwood, Montgomery, Ala., for plaintiff-appellee.

Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE, District Judge [*].

VANCE, Circuit Judge:

In this 42 U.S.C. § 1983 [1] action, the jury awarded Jack Thompson, a former Alabama Highway Department pilot damages in the amount of $20,000 for deprivation of his constitutional rights under the first and fourteenth amendments by Dan H. Turner, assistant highway director. In addition, the trial court awarded Thompson $8,000 in attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Turner appeals both judgments. We conclude that because of the insufficiency of the evidence against Turner, the trial court erred in failing to grant Turner's motion for a directed verdict or judgment notwithstanding the verdict and in awarding attorneys' fees.

I.

In 1968, Thompson became a pilot in the aviation section of the Alabama Highway Department. He received permanent pilot II classification under the state merit system on March 19, 1971. Thompson served as the aviation section's chief pilot,[2] supervising and directing the activities of the

---

[*] District Judge of the Middle District of Georgia, sitting by designation.

1. Section 1983 provides,

    Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The position of chief pilot is not a special merit position under Alabama law.

section's other pilots, from September 22, 1971, until March 1973.

In November 1972, the secretary for Ray D. Bass, the Alabama highway director, telephoned Thompson and told him to bring the section's flight records to Bass' office to show a *Birmingham News* reporter whatever he requested. The reporter sought information about flights by Harry Pennington, the executive secretary to Governor Wallace. Thompson disclosed and explained the pertinent records and answered related questions. On November 19, 1972, the *Birmingham News* ran an article describing Pennington's use of state planes for personal business. Thompson subsequently acknowledged that he was the unidentified pilot who was quoted as expressing displeasure with Pennington's conduct.

In December 1972, one month after the *Birmingham News* article appeared, Turner became the assistant highway director. Turner suggested to Bass that Thompson be replaced as chief pilot. Other pilots in the section also voiced their dissatisfaction with Thompson's continued tenure as chief pilot. Although Thompson had received two excellent efficiency reports from his predecessor, the other pilots questioned his flying and administrative abilities, his capacity to deal effectively with his coworkers, and his tendency not to schedule himself enough flights. The pilots presented their grievances to Bass during two meetings in March 1973. Bass then relieved Thompson of his position as chief pilot. Bass testified that morale and administrative concerns, not flying ability, were the bases for his action.

Turner and Bass held a meeting of all state pilots shortly thereafter. Thompson left this meeting believing that operating procedures had been changed so that pilots were not to report daily to the hangar but were to remain at home on call. Consequently, Thompson ceased going to the hangar except to pilot pre-scheduled flights. At approximately the same time, all locks to the hangar and the office area where the flight status board was situated were changed. All pilots, except Thompson, received new keys. Turner acknowledges that he ordered keys to be withheld from Thompson because he was suspected of having stolen various items from these facilities. Unlike the other pilots, Thompson was denied a mail basket and a telephone credit card, was not allowed to attend flight schools or seminars, and was not notified of pilots' meetings. Despite these incidents, Thompson continued flying state planes until his discharge. At no time during this period was Thompson told that his ability was deficient.

With the approval of Bass, Turner wrote Thompson, on September 24, 1975, dismissing him from his permanent merit system position of pilot II effective October 1, 1975. The letter stated four ostensibly legitimate reasons for the discharge.[3] Thompson ap-

---

3. Dear Mr. Thompson:

For the past two years, we have closely reviewed your performance as a Pilot II. This performace [*sic*] has been lacking greatly compared with other pilots in the professional aviation field. [1] You are apparently unsure of your ability to perform in instrument conditions, evidenced by the fact that you have cancelled several trips during this period which were made by other pilots with less experience.

There have been numerous complaints from several cabinet members, members of the Governor's Staff and Highway Department officials concerning your cancellation of flights when weather conditions would have permitted the flights to be made with normal instrument procedures.

[2] Also, your lack of interest and dedication to your job has been very evident during this period. As long as State pilots are flying regularly during odd hours, it is not expected that they be present on the job from 8 A.M. to 5 P.M. each day, but when their schedule allows they should be present in their office during these hours. During this period you have not reported for work except for an occassional [*sic*] flight. Also, it has been very difficult, if not impossible, to reach you by telephone on several different occasions when your flying services were desperately needed.

[3] Recently, on three different occasions, when instrument conditions were prevalent you obtained the services of a pilot that was not employed by the State to accompany you and aid you in your instrument operating procedures. This is very irregular and magnifies the fact that you are unsure of your ability to operate in instrument conditions. All pilots, especially State pilots which are

pealed his dismissal to the Alabama Personnel Board on October 6, 1975. After a full hearing that board found Thompson had been wrongfully terminated from his job, because the evidence was not sufficient to sustain Turner's charges against Thompson. It reinstated Thompson to his pilot II position with full back pay on April 1, 1976.

After his reinstatement, Thompson claims to have been ostracized by his coworkers and treated differently from the other pilots. He was denied a state car, telephone and gasoline credit cards, a personal signaling device, and a key to the office, although he was given a hangar key. He resigned for these reasons on April 12.

Three months later Thompson instituted this section 1983 action against Governor Wallace, Bass, Turner, Senior Pilot Mitchell Sexton, and C. W. Anderson, a member of the state personnel board. All defendants filed motions to dismiss. The district court entered summary judgment in favor of Governor Wallace, but denied the motions of the other defendants on the condition that Thompson amend his complaint to specify the particular acts charged against each defendant. In his amended complaint, Thompson charged the remaining defendants individually and jointly with punishing him for exercising his first amendment rights and with depriving him of his position without due process of law.

The case was tried before a jury in October 1976. When Thompson finished presenting his evidence, the court granted C. W. Anderson a directed verdict, but denied the other defendants' motions for directed verdicts. The jury subsequently found that Bass and Sexton were not liable to Thompson, and returned a $20,000 verdict against Turner. Turner filed a motion for a new trial or judgment notwithstanding the verdict, which the court denied. On Thompson's motion, the court awarded him attorneys' fees of $8,000 to be paid by Turner.

Turner appeals the jury's verdict and the award of attorneys' fees. He argues that Thompson did not state a claim on which section 1983 relief could be granted and that Thompson's evidence was not sufficient to support the jury's verdict. We reverse. Thompson's amended complaint adequately stated a claim under section 1983, but Thompson's proof was not sufficient to establish Turner's liability.

## II.

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *Accord, Cruz v. Skelton*, 543 F.2d 86, 88 (5th Cir. 1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977); *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506–07 (5th Cir. 1971). To be entitled to section 1983 relief, a plaintiff must prove that (1) a defendant acting under color of state law (2) deprived him of a constitutionally protected right. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970), *Smith v. YMCA of Montgomery, Inc.*, 462 F.2d 634, 647 (5th Cir. 1972). Turner does

---

constantly transporting high level State officials, must have absolute confidence in their flying ability in order to operate the aircraft safely and to inspire pilot-confidence with the passengers.

[4] A Pilot II position requires that a pilot operate complex multi-engine aircraft. With your lack of confidence in the small twin-engine Aztec, it has been impossible for you to transition into the multi-engine turbo-prop Aero Commander 690A. Also, the State Highway Department supplies one crew member for the Alabama Development Office Jet Commander. Of course, not being able to transition into the turbo-prop, it has also been impossible for you to safely perform as a crew member on the Jet Commander.

It is imperative that all Pilot II's be capable of safely performing in all aircraft.

Due to your inability to perform the duties of a Pilot II, it is with regret that we terminate you from this position effective October 1, 1975.

Yours very truly,
/S/ Dan H. Turner
Dan H. Turner
Assistant Highway Director

not dispute that, as Alabama's assistant highway director, he acted under color of state law. In his rather jumbled complaint Thompson alleged that Turner deprived him and conspired to deprive him of several rights secured by the first amendment and the due process clause of the fourteenth amendment. Some, but not all, of Thompson's allegations would, if proved, have entitled him to relief.

■ Thompson primarily claimed that Turner, conspiring with the other defendants, ostracized him by denying him certain job privileges given the other pilots, relieved him of his duties as chief pilot, relegated him to a subordinate position among pilots in the highway department, then dismissed him to punish him for giving information to the *Birmingham News* reporter. After his reinstatement, Thompson asserts, Turner and the other defendants forced him to resign by their continued harassment for the same reason. An action for damages under section 1983 can clearly be based on a claim that a person acting under color of state law denied a claimant rights guaranteed by the first amendment, applied to the states through the fourteenth amendment. *Moreno v. Henckel*, 431 F.2d 1299, 1305 (5th Cir. 1970). Thompson would thus have been entitled to relief had he proved his allegation that Turner discharged him or forced him to resign to punish him for exercising his first amendment right of free speech, and the court properly denied Turner's motion to dismiss Thompson's first amendment claim. *See Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Stewart v. Bailey*, 556 F.2d 281, 284 (5th Cir. 1977); *Rainey v. Jackson State College*, 435 F.2d 1031, 1034–35 (5th Cir. 1970).

**4.** Because Thompson had a protected property interest in his state job, we do not decide whether this property interest was essential to his claim that his reputation was damaged in the course of his dismissal. *Compare Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976) *with Robison v. Wichita Falls & North Texas Community Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975).

**5.** To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have

■ In his complaint, Thompson also asserted that, in dismissing him and forcing him to resign, Turner and the other defendants violated the procedural and substantive due process guarantees of the fourteenth amendment. *See generally Bowling v. Scott*, 587 F.2d 229, 231 (5th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 69, 62 L.Ed.2d 45 (1969); *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527, 534 (5th Cir. 1977); *Ferguson v. Thomas*, 430 F.2d 852, 857–59 (5th Cir. 1970). Unlike the first amendment guaranty, which applies regardless of the claimant's interest in his or her state job, *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977), a claimant ordinarily [4] is not entitled to procedural and substantive due process when his or her state employment is terminated unless he or she has a property interest in continued employment. *See Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976); *Megill v. Board of Regents*, 541 F.2d 1073, 1081 (5th Cir. 1976). Turner contends that Thompson did not have a property interest in his job, thus that he was not entitled to due process protection. We disagree.

■ Alabama state law created Thompson's "legitimate claim of entitlement" to his continued state employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[5] *See generally Bishop v. Wood*, 426 U.S. at 344, 96 S.Ct. at 2077 (no entitlement under state law); *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975) (entitlement under either state law

more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

or rules promulgated by state officials); *Perry v. Sindermann*, 408 U.S. at 599–603, 92 S.Ct. at 2698–2700 (entitlement under mutually explicit understanding of the parties). The provisions of the Alabama Merit System Act, sections 36–26–1 through 36–26–47 of the Code of Alabama (1975), and the rules adopted by the personnel board pursuant to the Act establish that Thompson had a protected property interest in his position as a pilot with the Alabama Highway Department. *See United Steelworkers v. University of Alabama*, 599 F.2d 56, 60 (5th Cir. 1979). The statute that controls dismissals and discipline proceedings, section 36–26–27 of the Code of Alabama, provides in pertinent part, "[a]n appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby . . . ." Rule XII, section 2(a), of the Rules of the Personnel Board provides, "The appointing authority may remove any permanent employee of the classified service for cause only."

Turner relies on *Simpson v. Van Ryzin*, 289 Ala. 22, 265 So.2d 569 (1972), in which the Supreme Court of Alabama construed the relevant provisions of Alabama law. The court observed, "A public office which the legislature creates is not the property of the office holder within the constitutional provision against depriving a man of property, nor does it ever become a vested right as against the right of the state to remove him." 289 Ala. at 28, 265 So.2d at 573. Turner argues that this decision compels us to find that Thompson did not have a constitutionally protected property interest in his state job.

Although a state court may define the interest state law has given a public employee in his or her state job, we are not bound to follow the portions of the state court's decision in which the court purports to determine whether the interest created by state law is protected by the federal constitution. "While the State may define what is and what is not property, once having defined those rights the Constitution defines due process . . . ." *Arnett v.*

*Kennedy*, 416 U.S. 134, 185, 94 S.Ct. 1633, 1660, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part), *quoted in Thurston v. Dekle*, 531 F.2d 1264, 1271 (5th Cir. 1976), *vacated and remanded on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978) (for consideration in light of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (six members of Supreme Court agree with quoted holding). A state employee that may be discharged at will under state law has no property interest in his or her job, but a state employee whose employment may be terminated only for cause has a property interest in the state employment and is entitled to due process protection. *Bishop v. Wood*, 426 U.S. at 345 & n.8, 96 S.Ct. at 2077, n.8; *Thurston v. Dekle*, 531 F.2d at 1272. Alabama law authorizes a state employee's discharge only for cause. *Simpson v. Van Ryzin*, 289 Ala. at 30–31, 265 So.2d at 575–76; Code of Ala. § 36–26–27 (1975); Rule XII, § 2(a), Rules of the Personnel Board. Alabama law therefore gave Thompson a constitutionally protected entitlement to continue public employment.

Thompson alleged that in three different ways Turner and the other defendants denied him the procedural due process to which he was entitled. We, however, find that Thompson's allegations on this issue, even if proved, would not have entitled him to relief.

First, Thompson claimed that Turner, who used procedures authorized in section 36–26–27 of the Code of Alabama, deprived him of constitutionally adequate process by dismissing him without pretermination notice and an opportunity to be heard. Turner's September 1975 letter notifying Thompson of his dismissal certainly did not meet the minimum requirement of due process outlined in *Thurston v. Dekle*, 531 F.2d at 273. *See generally, Davis v. Vandiver*, 494 F.2d 830, 832–33 (5th Cir. 1974). These minimally adequate procedures include, "prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those rea-

sons." *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980). *See also, Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Thompson's allegations, however, show that he received a full posttermination hearing before the Alabama Personnel Board, was reinstated, and received full back pay. In *Glenn v. Newman*, 614 F.2d at 472, Judge Frank M. Johnson, Jr., writing for another panel of this court, found that, although the pretermination procedures afforded a dismissed public employee with a property interest in his job were constitutionally inadequate, the error was cured by subsequent posttermination proceedings that included written notice of the charges and a public hearing during which the employee was represented by an attorney, presented witnesses, and cross-examined opposing witnesses. See also, *Blair v. Robstown Independent School District*, 556 F.2d 1331, 1334–35 (5th Cir. 1977). The court found that the employee was entitled only to back pay due for the period between his dismissal and his posttermination hearing. *Glenn v. Newman*, 614 F.2d at 473. Because in Thompson's case, unlike *Glenn v. Newman*, the posttermination hearing panel reinstated Thompson and awarded him back pay, we find that the constitutional inadequacy of the pretermination proceedings was cured and that Thompson was not entitled to additional relief based on these allegations.

 ■ Second, Thompson asserted that in dismissing him, Turner damaged his reputation and his ability to find another position as a pilot without fourteenth amendment due process. To obtain relief based on this allegation, Thompson was required to establish "that in the course of terminating his employment, [Turner] prepared a report, without giving him notice and an opportunity to be heard which was (a) false, (b) stigmatizing, and (c) published."[6] *Huffs-*

tutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (footnotes omitted). *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (false); *Bishop v. Wood*, 426 U.S. at 348–49, 96 S.Ct. at 2079 (published); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976) (in the course of terminating employment); *Board of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707 (stigmatizing). Thompson alleged that the charges contained in Turner's dismissal letter were false and stigmatizing and that the letter was published; however, Thompson's allegations show that he received an adequate posttermination hearing after which his reputation was vindicated and Turner reinstated him in his job. We, therefore, find that the constitutional error in the procedures employed by Turner was cured in the subsequent proceedings.[7] *See Bishop v. Wood*, 426 U.S. at 350–53, 96 S.Ct. at 2080–81 (Brennan, J., dissenting).

 ■ Third, Thompson claimed that Turner denied him procedural due process by failing to follow procedures required by Alabama law in discharging him. Section 36–26–22 of the Code of Alabama directs appointing authorities to report employees' service ratings to the director regularly and provides that employees "shall be given reasonable opportunity to inspect the records of the department which show his service ratings." Thompson alleged that Turner did not give him the required regular service ratings. Service ratings, however, are not listed as a prerequisite to dismissal under section 36–26–27 of the Code of Alabama which governs "Dismissals and disciplining of employees generally." We find that this alleged violation of state law does not rise to the level of a constitutional deprivation; therefore, it, like Thompson's other procedural due process claims, does not entitle him to relief under section 1983. *See Miller v. Carson*, 563 F.2d 757, 760 n.7 (5th Cir. 1977).

---

**6.** *See* note 4 *supra.*

**7.** On Thompson's failure to prove his claim that Turner denied him due process by forcing him

to resign and by injuring his reputation after his reinstatement, *see* section III *infra.*

Finally, Thompson claimed that Turner denied him and conspired to deny him substantive due process because Turner's decision to dismiss Thompson was made arbitrarily, capriciously, and maliciously and was based on information that Turner knew was false. This claim, like Thompson's first amendment claim, was based primarily on his allegation that Turner discharged him, then harassed him into resigning after his reinstatement for an impermissible reason, as punishment for having given information to the *Birmingham News* reporter, rather than for a legitimate one. In *Bishop v. Wood,* a section 1983 case in which the discharged public employee did not have a property interest in his state job, the Supreme Court cautioned,

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. at 349–50, 96 S.Ct. at 2080. Unlike Bishop, however, Thompson had a property interest in his state employment and asserted that his employer, Turner, was motivated by a desire to retaliate for Thompson's exercise of his first amendment rights. *See Ferguson v. Thomas,* 430 F.2d at 857. We therefore find that, if proved, this claim would have entitled Thompson to recover under section 1983. *See generally Thompson v. Gallagher,* 489 F.2d 443, 446–47 (5th Cir. 1973); *Buhr v. Buffalo Public School*

*District,* 509 F.2d 1196, 1200–02 (8th Cir. 1974); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 4–5 & n.12 (7th Cir. 1974).

### III.

The jury found Turner liable to Thompson on his section 1983 claims. The court then denied Turner's motion for a judgment notwithstanding the verdict or a new trial. In evaluating the grant or denial of a judgment notwithstanding the verdict, we are governed by the standards established in *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (en banc). Our task is not to reweigh the evidence to reach our own conclusions about the correctness of the jury's decision; "[r]ather, *Boeing* requires us to determine whether reasonable men could, under any theory submitted to the jury, have resolved the dispute as the jury did." *Crowe v. Lucas,* 595 F.2d 985, 989 (5th Cir. 1979). Because Thompson did not prove that Turner deprived him of his first amendment rights or of substantive due process, we find that the court erred in upholding the jury's verdict.

To have found Turner liable on Thompson's first amendment theory, the jury was required to have determined (1) that Thompson's discussion with the *Birmingham News* reporter was a substantial or motivating factor in Turner's decision to dismiss Thompson, to conspire to dismiss him, or to force him to resign, and (2) that Turner would not have terminated Thompson, conspired to terminate him, or forced him to resign had Thompson not given information to the reporter. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576; *Goss v. San Jacinto Junior College,* 588 F.2d 96, 99 (5th Cir.), *modified on other grounds,* 595 F.2d 1119 (5th Cir. 1979); *Hastings v. Bonner,* 578 F.2d 136, 141 (5th Cir. 1978).[8] The evidence produced at trial, however, showed that Turner became assistant director after the publication of the *Birmingham News* story. He was not shown to have known about the article until Thompson's case was

---

8. The distinction between the conjunctive requirements is somewhat obscure.

considered by the personnel board, more than three years after the article's publication. Because no evidence demonstrated Turner's exposure to the article or its contents, Thompson did not show that his interview with the reporter substantially motivated Turner's decision to dismiss him or that Turner would not have discharged him had Thompson not given information to the reporter.

Thompson not only did not show that his conversation with the reporter was a substantial factor in his ostracism after his reinstatement, but he also did not demonstrate that Turner authorized, caused, or conspired to cause the disparate treatment that, he claims, forced his resignation. Although Thompson was treated differently from the other pilots during his brief return, the evidence did not reveal that the difference was caused by anything other than time, administrative difficulties, and, perhaps, the hostility of his immediate coworkers. The jury may have blamed Turner for Thompson's ostracism because Turner was in charge of personnel. An official's liability under section 1983, however, may not be based on respondeat superior or vicarious liability. *Monell v. Department of Social Services*, 436 U.S. 658, 664 n.7, 98 S.Ct. 2018, 2022 n.7, 56 L.Ed.2d 611 (1978); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Thompson failed to show that Turner's actions after Thompson's reinstatement "caused a constitutional violation." *Baskin v. Parker*, 602 F.2d at 1208. *See generally Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979). Similarly, the evidence does not show that Turner agreed or conspired with anyone to dismiss Thompson or to force him to resign because he gave information to the *Birmingham News* reporter. *See Crowe v. Lucas*, 595 F.2d at 993.

Because Thompson did not show that Turner discharged him or conspired to discharge him for exercising his first amendment rights, he also failed to prove his substantive due process claim which, like his first amendment claim, was based primarily on his factual allegation that Turner

discharged him because he talked to the *Birmingham News* reporter. *See generally Cook v. Whiteside*, 505 F.2d 32, 34 (5th Cir. 1974) (allegation of arbitrary and capricious action must be supported by facts). Thompson did not demonstrate that Turner knew or suspected that the evidence of Thompson's airborne shortcomings was false or that Turner's charges that Thompson was unable to fly safely and confidently were unreasonable. Thompson thus did not establish that Turner's decision to dismiss him was arbitrary, capricious, and motivated by a desire to penalize him for exercising his constitutionally protected rights.

In view of Thompson's failure to prove that Turner deprived him or conspired to deprive him of his first amendment rights or of substantive due process, reasonable persons could not have returned a verdict against Turner on either of the theories properly submitted to the jury. We therefore find that the district court erred in failing to grant Turner's motion for judgment notwithstanding the verdict and in awarding Thompson attorneys' fees to be paid by Turner.

REVERSED.