Margaret Greene BREW, f/k/a
Margaret Arnold, Plaintiff,

v.

SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA, et al.,
Defendants.

No. 84–424–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 12, 1985.

Melanie Malherbe, Atty., Orlando, Fla., for plaintiff.

Frank C. Kruppenbacher, Orlando, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE KENDALL SHARP, District Judge.

This case came before the Court for a bench trial on August 28, 1985. Having heard and considered the plaintiff's case and argument of counsel, the Court treated

defendants' motion for a directed verdict as a motion for involuntary dismissal and granted it. The Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

In this action under 42 U.S.C. § 1983, plaintiff seeks damages, reinstatement, back wages and benefits, attorney's fees and costs for alleged violations of her First Amendment right of association and her Fourteenth Amendment due process rights. Plaintiff alleged that she was fired by defendants, Orange County School Board (School Board), Dr. James Schott and Jane D. Courtney, from her teacher aide position without due process because of her "fraternization" with prisoners on a work release program at the school where she was employed. Neither party demanded a jury trial.

Plaintiff was employed by the defendant School Board in 1979 as an office clerk under the CETA program. She subsequently was hired by the School Board as a teacher's aide in October 1979, and was employed by the Board as a classified noncertified employee with a fixed-term contract for the ten-month period that concluded in June 1982. At the time her contract was not renewed in the Spring of 1982, plaintiff was employed by the defendant School Board as a teacher's aide at the Woodlands School, which was the school opened in 1980 by the Orange County School System for retarded, physically handicapped and multi-handicapped children at Sunland State Hospital. Plaintiff's position as a teacher's aide was within the bargaining unit represented by the Orange County Classified Employees Association, American Federation of State, County and Municipal Employees, AFL–CIO, Local 3053, and was subject to the contract between the School Board and the Union.

The defendant, Orange County School Board, operates, controls and supervises the public schools within the school district of Orange County, Florida, pursuant to the authority delegated by Section 4(b) of Article IX of the Florida Constitution and § 230.03(2), Florida Statutes. Defendant, Dr. James Schott, is and was at all times relevant to this action the Superintendent of Orange County Public Schools. Defendant, Dr. Jane D. Courtney, was at all times relevant to this action the Principal of the Woodlands School of Orange County Public Schools. In that capacity, she was plaintiff's employment supervisor. Dr. Courtney recommended plaintiff's reappointment or non-reappointment to Dr. Schott, who in turn made such recommendations to the School Board.

Plaintiff testified that in the Spring of 1982, Dr. Courtney told her at a weekly meeting with teachers and teacher's aides that they would have jobs for the next school year unless they were laid off. According to plaintiff, Dr. Courtney initially informed plaintiff she would be laid off, and subsequently at a private meeting told her that her position was available. Plaintiff testified that she first learned that she would not be reappointed for the next school year after she was suspended with pay in May 1982.

In contrast, Dr. Courtney testified that she informed plaintiff at her March 1982 evaluation that she was not recommending plaintiff for reappointment for the 1982–83 school year. Dr. Courtney indicated that she recommended plaintiff's non-reappointment, despite giving plaintiff satisfactory marks on her evaluation form, because of numerous minor problems such as plaintiff's excessive absenteeism, her reading of magazines during working hours, her difficulty working with other aides, her failure to wear appropriate shoes, and her failure to require her guests to check in before visiting her as required by a School Board rule. In fact, Dr. Courtney specifically noted on plaintiff's otherwise positive evaluation that plaintiff wore inappropriate shoes, and Dr. Courtney deliberately left blank the evaluation category for attitude and cooperation. Dr. Courtney's recommendation of non-reappointment was adopted by defendant Dr. Schott and the defendant School Board in May, 1982. Thereafter, plaintiff was notified of the non-reappoint-

ment by defendants. Dr. Courtney's testimony that she recommended plaintiff's non-reappointment in March was supported by defendants' exhibits. Based upon these exhibits and Dr. Courtney's testimony, the Court finds that in March, Dr. Courtney recommended that plaintiff not be reappointed and informed plaintiff of her recommendation.

After Dr. Courtney advised plaintiff of her recommendation of non-reappointment, plaintiff was reprimanded by Defendant Courtney for fraternization with prisoners who were on the Woodlands School campus on a work release program. The Woodlands School was on the campus of the Sunland State Hospital, which was operated by the State of Florida. Sunland had specific rules prohibiting fraternization with the prisoners by its employees. The Woodlands School was governed by these rules since it was a tenant of the Sunland Center. Plaintiff testified that she regarded the term fraternization as meaning that she was having a sexual relationship with a work release prisoner, and was very upset by the fraternization reprimand.

In fact, the evidence showed that plaintiff was so upset that she had an altercation with the member of the teaching faculty who had reported that plaintiff passed notes to the prisoners. Specifically, the teacher reported to defendant Dr. Courtney that she was chased home in her car by plaintiff, and alleged that plaintiff had harassed her. Defendant Dr. Courtney notified the Employee Relations Department of defendant Orange County School Board, and an investigation was conducted. The plaintiff was relieved from duty with pay pending investigation by letter dated May 28, 1982, with relief of duty effective June 1, 1982. Plaintiff received full pay and benefits for the approximately two weeks remaining on her fixed-term contract. On June 21, 1982, defendants notified plaintiff that the investigation in connection with the alleged harassment of other employees had been completed. However, since plaintiff had not been reappointed to a position for the 1982–83 school year, the School Board took no further action in the matter.

There was no report issued as a result of the investigation.

The May 28 letter was the only notification plaintiff received in connection with her relief of duty with pay. She was not notified of any procedures available to contest her relief of duty with pay, and she indicated that she was never apprised of the results of the investigation. She also was not accorded notice and an opportunity to be heard in connection with her non-reappointment. Although plaintiff was not reappointed to a teacher's aide position for the 1982–83 school year, she testified that she subsequently worked for the School Board as a substitute teacher and eventually with handicapped children.

Plaintiff contends that she had an expectation of continued employment because Dr. Courtney told her that her position would be open and that plaintiff would have a position. Plaintiff's testimony concerning her understanding of the reappointment process was evasive, and plaintiff claimed that she did not understand the term "appointment" or the appointment process. However, when questioned about her understanding of the process in a specific factual context, it was clear she understood that she was employed on a yearly basis.

Under the contract between the School Board and the Union, a classified non-certified employee may be disciplined or dismissed only for just cause. Sylvester Gates, a Union executive board member and chief grievance representative who has been employed by the defendant School Board as an annually reappointed classified employee for nineteen years, testified on plaintiff's behalf. Mr. Gates was involved in negotiating the Union contract in effect from August 1981 through June 1984. Mr. Gates stated that relief of duty with pay during an investigation is not a disciplinary action under the Union contract. He also indicated that the Union has asserted the position that once an employee has successfully passed the probationary period, they may not be non-reappointed except for

cause under the Union contract discharge provisions. Mr. Gates admitted that the Union has never contested the right of a principal to non-reappointment of a classified employee and did not do so in this case, although he indicated that he expected such a challenge to be heard this Fall.

Dr. James Skaggs, the associate superintendent for Employee Relations, testified as the spokesperson for Dr. Schott. Dr. Skaggs indicated that the defendant School Board had an unwritten policy under which classified employees could be terminated by non-reappointment. He further stated that under this process the classified employee had no right to notification and utilization of the Union grievance procedures or other procedural formalities. He also testified that relief of duty with pay is not a disciplinary action.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. In her complaint, plaintiff seeks relief for violations of her Fourteenth Amendment right to procedural due process and her First Amendment right of association.

### I. Procedural Due Process

Counts I and III of plaintiff's complaint allege that plaintiff was deprived of property and liberty respectively without due process. It is axiomatic that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Thus, the initial due process inquiry is whether or not plaintiff had a constitutionally protected property or liberty interest in connection with her employment by the defendant School Board, the relief of duty with pay, and the nonrenewal of her fixed-term contract.

### (A) *Property*

■ The Supreme Court has recognized that a government employee may have a constitutionally protected property interest in continued government employment. *Id.* at 577, 92 S.Ct. at 2709. In order to establish that she had a property interest in her teacher's aide position, plaintiff must show that she had a "legitimate claim of entitlement" to her continued employment. *Id.; Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1185 (11th Cir. 1985). For example, a permanent government employee whose employment may be terminated only for cause has a property interest in her continued employment. *Blanton v. Griel Memorial Psychiatric Hospital*, 758 F.2d 1540, 1542 (11th Cir. 1985); *Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir.), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980). In contrast, a government employee who may be discharged at will does not have a property interest in her continued employment. *Id.* An employee's mere subjective expectation of continued employment does not give her a constitutionally protected property interest. *Perry v. Sinderman*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Wells v. Doland*, 711 F.2d 670, 675 (5th Cir.1983). However, a "person's interest in a benefit is a 'property interest for due process purposes if there are ...' rules or mutually explicit understandings that support [her] claim of entitlement to the benefit." *Perry v. Sinderman*, 408 U.S. at 601, 92 S.Ct. at 2699.

Applying these legal precepts to the facts in this case, it is clear that plaintiff was not deprived of a constitutionally protected property interest. The evidence at trial showed that plaintiff had a valid fixed-term contract binding the defendant School Board to employ her for the ten-month period which ended in June 1982. Plaintiff was employed, paid and received all benefits through expiration of her contract, although she was relieved of duty for approximately the last two weeks of her contract. Plaintiff attempted to prove that she had a property interest in her position on three theories: (1) the relief of duty with pay in May 1982; (2) nonrenewal with-

out cause despite the Union position that classified employees on fixed-term contracts could not be non-reappointed without cause, and (3) nonrenewal of her contract despite Dr. Courtney's alleged assurances that she would have her position the next year.

■ The Union contract which covered plaintiff's position provides that employees may not be disciplined without cause. Thus, the Union contract arguably gave her a property interest in her position through the end of the ten-month contract. From plaintiff's arguments at trial and the allegations in the complaint that plaintiff was fired, it appears that plaintiff claims that her relief of duty with pay pending investigation in May 1982 was a disciplinary action which deprived her of a property interest, and that defendants failed to afford her due process in imposing the disciplinary penalty. However, the evidence produced in plaintiff's case showed that relief of duty with pay pending investigation is not a disciplinary action within the meaning of the Union contract. Dr. Skaggs, Dr. Courtney and Mr. Gates, the Union representative, all testified that they did not consider relief of duty with pay pending investigation of the harassment allegations a disciplinary action. Based upon the evidence at trial, the Court concludes that the relief of duty with pay and benefits was not a disciplinary action. Thus, even if plaintiff had a protected property interest in her employment through the end of her contract, she was not disciplined or discharged. Therefore, plaintiff was not deprived of any property interest in connection with the relief of duty with pay pending investigation.

■ Plaintiff also contends that she had a protected property interest in her continued government employment based upon the Union's position that once a classified employee has successfully completed the probationary period, she may not be non-reappointed except for cause under the Union contract discharge provisions. In argument, plaintiff emphasized that the Union contract does not specify that classified employees are year-to-year employees with annual contracts. However, the evidence at trial showed that the School Board has had a longstanding policy that annual contract, classified employees are employed only for the term of their ten- or twelve-month contracts and are subject to the reappointment process. The Union contract was negotiated in the context of the School Board's longstanding annual contract and reappointment policy. Further, at trial the Union representative admitted that the Union had never contested the right of a principal to non-reappoint a classified employee, although such a challenge was anticipated. Furthermore, although plaintiff claimed she did not understand the reappointment process, it was clear from the facts that she understood that she was employed annually. Thus, it is clear that the parties did not have a "mutual explicit understanding" that classified employees are entitled to reappointment absent just cause for non-reappointment. Given the factual context and the lack of specificity in the Union contract terms, the Court is unwilling to hold, as a matter of law, that the Union contract precludes the annual reappointment process utilized by the defendant School Board. Thus, the Union contract did not confer upon plaintiff a constitutionally protected property interest beyond the expiration of her fixed-term contract.

■ Finally, plaintiff contends that she had a legitimate subjective expectation of continued employment based upon Dr. Courtney's assurances that she would be employed for the next year. However, the Court has found as a fact that plaintiff was informed by Dr. Courtney that she would not recommend plaintiff for reappointment, and that no written or verbal representations of employment beyond the fixed-term were made to plaintiff. Further, the satisfactory evaluation did not create a protected property interest based upon a mutually explicit understanding. *See Sullivan v. School Board of Pinellas County,* 773 F.2d at 1186. Thus, plaintiff's unilateral subjective expectations were not based

upon a mutual understanding, and do not confer upon her a constitutionally protected property interest in her government position.

In summary, plaintiff failed to show that she had a constitutionally protected property interest in her continued government employment. Under her contract, plaintiff had no right to any employment or re-employment beyond the expiration of her 1981–1982 fixed-term contract. Relief of duty with pay by defendants was not a disciplinary action for which just cause was required under the Union contract, and the Union contract did not confer upon her a right to reappointment absent just cause. Nor did plaintiff have a legitimate subjective expectation of continued government employment. Therefore, the Court concludes that plaintiff did not establish that she was deprived of a constitutionally protected property interest.

B. *Liberty*

■ Plaintiff also alleges that she had a constitutionally protected liberty interest in her employment, and that she was deprived of her liberty interest without due process. Plaintiff need not have a property interest within the meaning of the Fourteenth Amendment in her position to have a constitutionally protected liberty interest. *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 340–41 (5th Cir.1978); *Wells v. Doland,* 711 F.2d at 676. Although plaintiff's Fourteenth Amendment liberty interest encompasses her freedom to work and earn a living, *Wells v. Doland,* 711 F.2d at 676, "mere non-renewal of a … contract is not such a blight upon [her] good name, reputation, honor, or integrity as to constitute a deprivation of liberty." *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d at 340; *see Kelleher v. Flawn,* 761 F.2d 1079, 1087 (5th Cir.1985); *Campos v. Guillot,* 743 F.2d 1123, 1125 (5th Cir.1984).

In *Blanton v. Griel Memorial Psychiatric Hospital,* 758 F.2d 1540 at 1544, (11th Cir.1985), the Eleventh Circuit set forth the test for determining if the plaintiff has a liberty interest sufficient to implicate Fourteenth Amendment safeguards:

> In order to establish a claim that his freedom to take advantage of other employment opportunities was impaired, plaintiff must show that his freedom to work was stigmatized in or as a result of the charge process, that the charges were made public, and that plaintiff was denied a meaningful hearing to clear his name. *Wells v. Doland,* 711 F.2d 670, 676 (5th Cir.1983).

*See, e.g., Vaughn v. Shannon,* 758 F.2d 1535, 1537 (11th Cir.1985); *Kelleher v. Flawn,* 761 F.2d at 1087; *Thompson v. Bass,* 616 F.2d at 1266. In order to establish that she has been stigmatized, plaintiff must show that the charges against her seriously damaged her standing and association in the community or foreclosed her freedom to take advantage of other employment opportunities, and that the charges were false. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707; *Sullivan v. School Board of Pinellas County,* 773 F.2d at 1187; *Vaughn v. Shannon,* 758 F.2d at 1537; *Wells v. Doland,* 711 F.2d at 676–77. Plaintiff failed to adequately establish that her standing in the community is or would be seriously damaged by the fraternization allegations. Furthermore, plaintiff failed to show that her employment opportunities were foreclosed because she was employed by the defendant School Board as a substitute teacher after her non-reappointment. *See Wells v. Doland,* 711 F.2d at 676 n. 10.

Plaintiff also failed to show that the fraternization allegations were false. In fact, she admitted communicating with a work release prisoner while at school on several occasions. Thus, it appears that the allegations were concededly true, at least in part. Because plaintiff did not prove each of the *Wells* factors adopted by the Eleventh Circuit in *Blanton* and *Vaughn,* the Court concludes that plaintiff failed to establish a liberty interest cognizable under the Fourteenth Amendment.

## II. *First Amendment—Right of Association*

■ In her complaint, plaintiff also claimed that she was discharged because of her fraternization with work release prisoners, and that defendant's discharge of her for this reason violated her First Amendment right of association. "A fundamental proposition in our constitutional jurisprudence is that government employment may not be conditioned upon a relinquishment of a constitutional right, including the rights to speech and association guaranteed under the first amendment." *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Wilson v. Taylor,* 733 F.2d 1539, 1542 (11th Cir.1984) (*Wilson II*); *Waters v. Chaffin,* 684 F.2d 833, 836 (11th Cir.1982); *Wilson v. Taylor,* 658 F.2d 1021, 1027 (11th Cir.1981) (*Wilson I*); *Littlejohn v. Rose,* 768 F.2d 765, 769 (6th Cir.1985). Plaintiff, as a government employee, could not be disciplined or dismissed for a constitutionally infirm reason.

In examining whether or not a plaintiff has been disciplined or discharged for a reason which infringes upon her constitutionally protected First Amendment right of association, the Court must apply a tripartite test derived from *Mt. Healthy* and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under the applicable test, plaintiff must show that her conduct was constitutionally protected, and that this conduct was a substantial or motivating factor in the decision to discipline or not rehire her. If the Court decides that the speech or activity was constitutionally protected and a substantial or motivating factor in the discharge or disciplinary decision, the burden shifts to the defendant to show by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *Id.; Wilson II,* 733 F.2d at 1542–43; *Waters v. Chaffin,* 684 F.2d at 836–37; *Wilson I,* 658 F.2d at 1207; *Thompson v. Bass,* 616 F.2d at 1267.

In this action, plaintiff failed to carry her burden of proving that her fraternization with work release prisoners was a substantial or motivating factor in the decision to discipline or not rehire her. First, the Court determined that relief of duty with pay was not a disciplinary action. Second, the evidence at trial showed that the allegations that plaintiff harrassed a teacher were the primary reason for plaintiff's suspension with pay pending an investigation. Third, the Court found that Dr. Courtney's decision not to recommend that plaintiff be reappointed was made prior to the fraternization and harassment allegations. Thus, these allegations had no bearing on the non-reappointment decision.

In summary, the Court concludes that plaintiff's alleged fraternization was not a substantial or motivating factor in any disciplinary or discharge decision by defendant. Plaintiff's suspension with pay was not a disciplinary action, and primarily was a consequence of the harassment allegations. The decision not to renew plaintiff's contract was made prior to the fraternization and harassment allegations.

■ Further, plaintiff's admitted conduct in communicating with work release prisoners while at work was not a constitutionally protected association in the context of this case. The determination of whether or not conduct is constitutionally protected is made by reference to the paradigm balancing test set forth by the Supreme Court in *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734, which stated:

"[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." (citation omitted). At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in pro-

moting the efficiency of the public services it performs through its employees. (citations omitted).

*See, e.g., McMullen v. Carson,* 754 F.2d 936, 938–39 (11th Cir.1985); *Leonard v. City of Columbus,* 705 F.2d 1299, 1303 (11th Cir.1983); *Waters v. Chaffin,* 684 F.2d at 836; *Wilson I,* 658 F.2d at 1027.

Social contacts such as the fraternization with which plaintiff was charged are associations which may be protected by the First Amendment under certain circumstances. *See Wilson II,* 733 F.2d at 1542–44. However, although the Court may not evaluate the content or "social worth" of ideas, *Leonard v. City of Columbus,* 705 F.2d at 1304; *Williams v. Board of Regents of the University System of Georgia,* 629 F.2d 993, (5th Cir.1980), *cert. denied,* 452 U.S. 926, 101 S.Ct. 3063, 69 L.Ed.2d 428 (1981), it is significant that the conduct in question is not of the type which "traditionally [has been] accorded greater protection in our society by virtue of the fact that the [conduct] goes to the heart of our democratic process." *Leonard v. City of Columbus,* 705 F.2d at 1304. In fact, "the State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Connick v. Myers,* 461 U.S. 138, 150, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). A stronger showing of the State's interests is required where an employee's speech or conduct involves matters of public concern. *Id.* at 152, 103 S.Ct. at 1692.

In this case, plaintiff testified that she spoke to one of the prisoners on casual social and family topics. Thus, the interest of the defendant School Board in effective and efficient fulfillment of its responsibilities to the public need not be as strong as it must be if the conduct or association involved implicates public issues. In fact, however, in this case the School Board had a strong interest in regulating the association in question. Plaintiff's contact with the prisoners while at the Woodland School violated an official school policy. Although the court must be able to identify an interest apart from compliance with a rule or policy in order for a discharge or disciplinary action to withstand First Amendment scrutiny, *Leonard v. City of Columbus,* 705 F.2d at 1305, the Supreme Court has accorded some significance to the lack of such an official policy in weighing the governmental interest involved, *see Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 284, 97 S.Ct. at 574; *Connick v. Myers,* 461 U.S. at 153, 103 S.Ct. at 1693, and the Eleventh Circuit has recognized the government interest in having employees follow rules or orders. *Berry v. Bailey,* 726 F.2d 670 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985).

The significant interests supporting the Woodland School policy included compliance with the Sunland policy. The Sunland rule clearly was premised upon concern for the safety of the residents, staff, and tenants; upon assuring that the prisoners did not escape; and upon insuring that staff and tenants focused their attention and care upon the residents rather than the work release prisoners. It is highly significant that plaintiff was attempting to exercise her associational rights on the school premises, *see Connick v. Myers,* 461 U.S. at 153, 103 S.Ct. at 1693, as distinguished from the off-duty, off-premises dating which was found to be a protected association in *Wilson II,* 733 F.2d at 1542–44. *See Waters v. Chaffin,* 684 F.2d at 837 (off-duty, off-premises derogatory comments about a superior to a 'friend' held to be protected speech); *Littlejohn v. Rose,* 768 F.2d at 768 F.2d at 769 (nonrenewal on basis of divorced status violates right to privacy).

In summary, upon applying the *Pickering* balance test as explicated in *Connors,* the Court finds that plaintiff's association with work release prisoners while on work premises was not protected by the First Amendment. Furthermore, the fraternization allegations were not a substantial or motivating factor in a disciplinary or nonrenewal decision.

## CONCLUSION

In order to prevail, plaintiff in this action must show either that she had a liberty or property interest sufficient to entitle her to due process or that she was disciplined or discharged for a constitutionally infirm reason. Plaintiff failed to establish that she had a property interest in her continued government employment, or that defendant's actions deprived her of a liberty interest. Plaintiff also failed to show that her social contact with work release prisoners while at work was protected by the First Amendment and that her fraternization with work release prisoners was a substantial or motivating factor in a discharge or disciplinary decision. Thus, plaintiff failed to establish a prima facie case showing a deprivation of her First Amendment right of association or her Fourteenth Amendment right to due process.

Accordingly, it is ORDERED that the Clerk shall enter judgment for the defendants. Each party shall bear its own costs.

It is SO ORDERED at Orlando, Florida, this 12th day of December, 1985.